COMMONWEALTH vs. WILLIAM CAVANAUGH.

Suffolk.   September 17, 1974. — October 11, 1974.

Present: TAURO, C.J., REARDON, BRAUCHER, HENNESSEY, & WILKINS, JJ.

*"Threshold" Police Inquiry.   Search and Seizure.   Probable Cause.*
*Constitutional Law,* Search and seizure.   *Practice, Criminal,* Appeal.

A determination by a single justice of this court in a criminal case that an
interlocutory appeal under G. L. c. 278, § 28E, involving the validity
of a warrantless search of an automobile on a street would facilitate
the administration of justice was proper. [279]
In a criminal case involving a warrantless search of the defendant's
automobile, where it appeared that the car fled after being told to
stop by police for driving the wrong way on a one-way street, and led
the police on a two and one-half mile chase in city streets, the police
had probable cause to stop the car and were justified in shining a
flashlight into the interior after the defendant had been asked to get
out, which resulted in the officer's observing in plain view what
appeared to be bolt cutter handles protruding out from under the
front seat and slugs on the seat, and the discovery of these objects
justified an ensuing more detailed search producing additional
evidence of possession of burglar's tools by the defendant. [281-283]

Two INDICTMENTS found and returned in the Superior
Court on October 11, 1972.

Motions to suppress were denied by *John P. Sullivan,* J.
An application by the defendant for an interlocutory
appeal was allowed by *Reardon,* J., in the Supreme Judicial
Court for the county of Suffolk, and the appeal was
reported by him.

*Frances Burns,* Assistant District Attorney, for the Commonwealth.

*Joseph S. Oteri & Charlotte Anne Perretta,* for the
defendant, submitted a brief.

BRAUCHER, J.   An interlocutory appeal by a criminal
defendant brings to us an issue. as to the legality of a

warrantless search of his automobile. Police officers stopped him for traffic offenses at night on a Boston street, and asked him to step out of his car. While he was on the sidewalk with one officer, another officer shined his flashlight into the car and saw several hundred slugs and what looked like and were the handles of a boltcutter. The officer reached in and pulled the tool from under the front seat. He then reached under the seat and pulled out other burglar's tools. The judge ruled that the search was proper, and we affirm.

The defendant was arrested at the scene on August 15, 1972, and was indicted on October 11, 1972, for possession of burglar's tools and for giving away slugs to be used to defraud. See G. L. c. 266, §§ 49, 75B. On October 10, 1973, after hearing, a judge of the Superior Court denied the defendant's motions to suppress the evidence seized from the car. The defendant sought an interlocutory appeal under G. L. c. 278, § 28E, and a single justice of this court determined that the administration of justice would be facilitated thereby, granted the appeal, and reported it to the full court without decision.

We summarize the findings of the Superior Court judge. The defendant, driving his car the wrong way on a one-way street, met a police cruiser. As the two cars passed, two officers in the cruiser yelled for him to stop, but he accelerated and a high-speed chase through city streets ensued. Two and one-half miles away a fire engine blocked the street, the defendant's car screeched to a halt, and the two officers reached him. He was asked to step out and was taken over to the sidewalk by one officer.

Meanwhile the other officer shined his flashlight into the car and saw several hundred slugs on the seats and a package large enough to contain 500 slugs, bearing the number 500. He also saw what he believed to be the handles of a boltcutter protruding back from beneath the front seat. He pulled them out, and the instrument was indeed a boltcutter. A screwdriver came out with it. He reached under the seat and found two pairs of gloves, a pair of pliers and a device used in auto thefts in substitution for the

normal ignition switch. He then went to the sidewalk and informed the defendant he was under arrest.

1. *Interlocutory appeal.* When an application for an appeal is granted under G. L. c. 278, § 28E, trial is stayed pending prosecution and determination of the appeal. The situation is thus similar to that arising under G. L. c. 278, § 30A, on a report before trial. See *Commonwealth* v. *Henry's Drywall, Inc.* 362 Mass. 552, 554-557 (1972). An interlocutory appeal, like a report, may be appropriate when the alternatives are a prolonged, expensive, involved or unduly burdensome trial or a dismissal of the indictment. See *Commonwealth* v. *Benjamin,* 358 Mass., 672, 673, n. 1 (1971); *Commonwealth* v. *Brandano,* 359 Mass. 332, 337 (1971); *Commonwealth* v. *Pignone,* 361 Mass. 566 (1972). But interlocutory appeals and reports should not be permitted to become additional causes of the delays in criminal trials which are already too prevalent. See *Commonwealth* v. *Horan,* 360 Mass. 739, 742-743 (1972). Defense counsel should carefully weigh the costs and benefits before seeking an interlocutory appeal.

In the present case the interlocutory appeal has apparently delayed a fairly simple trial for more than a year. But a single justice has made the necessary statutory determination that the appeal will facilitate the administration of justice. In view of the uncertainty which has surrounded warrantless automobile searches, we agree with that determination. Compare *Commonwealth* v. *Kane,* 362 Mass. 658 (1972), with *Commonwealth* v. *Snow,* 363 Mass. 778, 786-787 (1973).

2. *Burden of proof and findings.* We have recently held that the Commonwealth bears the burden of proving justification for a warrantless search. *Commonwealth* v. *Antobenedetto, ante,* 51, 57 (1974). The ruling in the present case was made before that decision, and the judge may well have thought that the burden was on the defendant rather than on the Commonwealth. In a brief prepared before the *Antobenedetto* decision the defendant attacked the judge's findings and argued that the burden of proving the legality of the search was on the Commonwealth.

In this setting we have examined the transcript of testimony with particular care, and we conclude that it fully supports the judge's subsidiary findings. On the most critical point, the officer who conducted the search, called by the defendant, testified that when the defendant was taken out of the car he saw a few hundred quarter-size slugs and "handles of what appeared to be bolt cutters," protruding to the back of the car from underneath the front seat. On cross-examination by the Commonwealth, asked whether he knew they were slugs, he said, "They looked like slugs." On redirect examination he said, "I had an idea . . . they [the handles of the boltcutter] were [part of a burglar's tool] but I couldn't say that they were bolt cutters just by looking, no." This testimony is internally consistent; it fully supports the judge's finding that the officer "observed several hundred 'slugs' " and handles which he "reasonably believed" were part of a boltcutter.

3. *Search incident to arrest.* The Commonwealth contends that the search of the car was lawful because incident to a valid arrest, citing *United States* v. *Robinson,* 414 U. S. 218, 225-226 (1973). See *Adams* v. *Williams,* 407 U. S. 143, 149 (1972). A warrantless search incident to arrest must be limited to the area "into which an arrestee might reach." *Chimel* v. *California,* 395 U. S. 752, 763 (1969). See *Cupp* v. *Murphy,* 412 U. S. 291, 295 (1973). The car was less remote from the defendant in time and place in the present case than in *Preston* v. *United States,* 376 U. S. 364, 367 (1964), but it seems at least doubtful that the car was within the reach of the defendant once the officers had him on the sidewalk. Compare St. 1974, c. 508, amending G. L. c. 276, § 1, enacted after the events here in issue.

More important, however, is the fact that the judge did not uphold the search on this ground and hence did not make a finding that there was a "custodial arrest" before the search. See *United States* v. *Robinson, supra,* 414 U. S. at 235 (1973). Although the case was not within G. L. c. 90, § 21, on arrests in traffic cases, we have little doubt that the officers could have made such an arrest on the ground that the high-speed chase through city streets involved a breach

of the peace. See *Commonwealth* v. *Gorman,* 288 Mass. 294, 296-298 (1934). But it does not follow that there was an arrest, much less a "custodial arrest." See *Commonwealth* v. *Holmes,* 344 Mass. 524, 526 (1962), and cases cited. The situation seems more accurately described as an "investigative stop" than as a "custodial arrest." See *Terry* v. *Ohio,* 392 U. S. 1, 24-26 (1968); *United States* v. *Robinson, supra,* 414 U. S. at 227 (1973); G. L. c. 90C, § 2, as amended by St. 1968, c. 725, §§ 2, 3; *Commonwealth* v. *Lehan,* 347 Mass. 197, 205 (1964); *Commonwealth* v. *Wilson,* 360 Mass. 557, 559-560 (1971), and cases cited.

4. *Threshold inquiry.* The police had probable cause to stop the car. *Commonwealth* v. *Wilson,* 360 Mass. 557, 560 (1971). "If policemen are to serve any purpose of detecting and preventing crime by being out on the streets at all, they must be able to take a closer look at challenging situations as they encounter them." *Dorsey* v. *United States,* 372 F. 2d 928, 931 (D. C. Cir. 1967). Like many other courts, we have held that the use of a flashlight to look into the interior of a car in such situations does not amount to a search at all. *Commonwealth* v. *LaBossiere,* 347 Mass. 385-386 (1964). *Commonwealth* v. *Haefeli,* 361 Mass. 271, 280 (1972).[1] Contrast *Commonwealth* v. *McCleery,* 345 Mass. 151, 153 (1962).

The defendant distinguishes the facts of our prior cases, and argues that once the occupants were out of the car (the transcript of testimony shows that a companion got out of the car with the defendant) the use of the flashlight did constitute a search and was unlawful under recent Supreme Court decisions, citing *Coolidge* v. *New Hampshire,* 403 U. S. 443 (1971), and *United States* v. *Robinson,* 414 U. S. 218 (1973). We have therefore reviewed the governing

---

[1] Accord, *United States* v. *Lee,* 274 U. S. 559, 563 (1927); *United States* v. *Hanahan,* 442 F. 2d 649, 654 (7th Cir. 1971); *United States* v. *Wright,* 449 F. 2d 1355, 1357-1359 (D. C. Cir. 1971); *United States* v. *Booker,* 461 F. 2d 990, 992 (6th Cir. 1972); *United States* v. *Wickizer,* 465 F. 2d 1154, 1157 (8th Cir. 1972); *United States* v. *Allen,* 472 F. 2d 145, 147 (5th Cir. 1973); *United States* v. *Hood,* 493 F. 2d 677, 680 (9th Cir. 1974); *People* v. *Whalen,* 390 Mich. 672, 679 (1973); *State* v. *Shevchuk,* 291 Minn. 365, 367 (1971); *Armour* v. *Totty,* 486 S. W. 2d 537, 539 (Tenn. 1972); *State* v. *Regan,* 76 Wash. 2d 331, 336 (1969).

principles as restated in *Cardwell* v. *Lewis,* 417 U. S. 583, 588-591 (1974), and cases cited.

"Generally, less stringent warrant requirements have been applied to vehicles" than to homes or offices. One factor has been "the exigent circumstances that exist in connection with movable vehicles." Another is that one has "a lesser expectation of privacy in a motor vehicle" than in one's person or building. The "exercise of a desire to be mobile does not, of course, waive one's right to be free of unreasonable government intrusion. But insofar as Fourth Amendment protection extends to a motor vehicle, it is the right to privacy that is the touchstone of our inquiry."

When the police officer first looked into the car in the present case, he did not have probable cause to believe that the car would yield any particular type of contraband or evidence useful for prosecution of crime. Nor was his "search" limited to the exterior of the car, or justified as an attempt to identify the car. On the other hand, there was no search of the glove compartment, the trunk, or closed containers in the interior of the vehicle. It is hard to think of a boltcutter or hundreds of quarter-size slugs as "personal effects, which the Fourth Amendment traditionally has been deemed to protect." *Cardwell* v. *Lewis, supra,* 417 U. S. at 591.

We think the officer was reasonable in his limited sight intrusion into the defendant's car in order to protect himself and others from persons or things which might be in the car and might endanger personal safety. *United States* v. *Santana,* 485 F. 2d 365, 368-370 (2d Cir. 1973), cert. den. 415 U. S. 931 (1974). If, as seems likely, he had grounds to arrest the defendant, we think he might also properly look to see whether any useful evidence was in plain view; we should be reluctant to adopt a rule which would encourage unnecessary arrests in order to validate obviously desirable observations. Finally, if the car was empty on a city street, he might properly look to see whether there was a need to safeguard articles of value in plain view. See *Harris* v. *United States,* 390 U. S. 234, 235-236 (1968); *Fagundes* v. *United States,* 340 F. 2d 673, 676 (1st Cir. 1965); *United*

*States* v. *Mitchell,* 458 F. 2d 960, 962 (9th Cir. 1972), and cases cited; *St. Paul* v. *Myles,* 298 Minn. 298, 303-304 (1974), and cases cited. Compare *Mozzetti* v. *Superior Court of Sacramento County,* 4 Cal. 3d 699, 707 (1971). Some or all of these reasons for shining a flashlight into a car are so likely to be present whenever there is probable cause to stop it on a public street at night that we think the police officer need not analyze closely why he uses his flashlight in such cases.

5. *Subsequent search: probable cause.* The judge ruled that when the officer first reached into the car he had probable cause to search it. At that point he knew that the defendant had accelerated when told to stop for a minor traffic violation. The defendant had led the police on a two and one-half mile high-speed chase through a densely populated area and had stopped only when a fire engine blocked his escape. The officer had seen the slugs and what he reasonably believed to be a boltcutter. While possession of such objects is not a crime, their presence in the setting was sufficient to create probable cause to believe that they were instruments intended for criminal use. They were lawfully seized, as were the like objects found under the front seat. *Commonwealth* v. *LaBossiere,* 347 Mass. 384 (1964).

6. The order denying the defendant's motions to suppress was correct. The cases are to be remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*