## COMMONWEALTH vs. STEPHEN B. SKEA.

Hampden. December 14, 1982. — October 26, 1984.

Present: GREANEY, C.J., ARMSTRONG, & SMITH, JJ.

*Search and Seizure,* Probable cause, Exigent circumstances. *Constitutional Law,* Search and seizure.

Discussion of the question whether probable cause and exigent circumstances, without more, can justify a warrantless search of a person. [692-701]
Where police officers had probable cause to believe that a young man approaching his automobile in a parking lot was carrying marihuana or other controlled substances, and where the man could easily dispose of any contraband he carried unless the officers took immediate action, the officers were justified in searching the man, and, finding diamonds in a cellophane envelope in the young man's pocket and receiving no satisfactory explanation of his possession of the diamonds, the officers were justified in seizing the diamonds even though they did not arrest the defendant until several weeks later, after they had confirmed that the diamonds had been stolen. [701-702]

INDICTMENT found and returned in the Superior Court Department on March 10, 1981.

A motion to suppress evidence was heard by *Murphy,* J., and the case was tried before *Simons,* J.

*James J. Pieri* for the defendant.

*John C. Bryson, Jr.,* Assistant District Attorney, for the Commonwealth.

ARMSTRONG, J. The defendant appeals from a conviction of receiving stolen goods. The stolen goods, diamonds, were found when a police officer searched the defendant's person; and the validity of that search is the sole issue in this appeal.

The search took place in Holyoke on a November evening in 1980. Two Holyoke police officers on routine patrol pulled into a small shopping center and parked next to a red Camaro automobile in front of a liquor store. From prior official contacts the police recognized one Thurston sitting in the front passenger

seat. No one else was in the automobile. The police knew
Thurston was not of drinking age. Through the window one
of the officers saw a handrolled cigarette with twisted ends on
the console between the front seats. The officer had prior
experience and training in narcotics investigation. He recog-
nized the cigarette as likely to be a "joint," or marihuana
cigarette. He asked Thurston what was in the cigarette.
Thurston denied ownership of it. The officer reached inside,
took the cigarette, smelled it, and confirmed that it contained
marihuana. Next to the cigarette, also on the console, was a
bean bag ashtray with quarter inch long stubs, which the officer
recognized to be "roaches," or smoked marihuana cigarettes.[1]
Thurston exited from the automobile and was searched for
further marihuana or other drugs. None was found.

At that point the driver, the defendant Skea, returned to the
vehicle. He also was well known to the officers, having been
arrested many times in the past. The officers asked him if the
joint was his. Skea replied, "Give me a break." The officers
searched Skea's pockets looking for further marihuana or other
controlled substances. In a zippered breast pocket of Skea's
jacket was a cellophane envelope. It contained what appeared
to be four diamonds.[2] Skea asserted that he had purchased
them two weeks before for fifty dollars. He was asked if he
had a bill of sale, to which he replied no. He was asked whom
he bought the diamonds from, and he answered that he did
not know his name.

The police retained the packet of diamonds for further inves-
tigation with Skea's consent.[3] The officers also decided not to

---

[1] Neither the testimony nor the judge's findings indicate whether the
officer first saw the roaches before or after reaching into the automobile to
take the joint. From the fact that the ashtray was in plain view on the
console next to ("six or eight inches from") the joint, the finder of fact
could properly draw an inference that the roaches were visible to the officer
from the outset.

[2] Three were in fact diamonds. One turned out to be a rhinestone.

[3] Skea does not contest the validity of the retention of the diamonds, as
opposed to the validity of the search that disclosed them. The judge found
that Skea had consented to the police keeping the diamonds for inquiry,
and there was evidence that warranted that finding. Alternatively, it could

arrest Skea and Thurston for possession of marihuana, and instead they destroyed the joint and the roaches by trampling them on the ground. This was in accordance with their informal policy not to arrest for possession of small amounts of marihuana unless a search revealed further or more serious drugs. Further investigation revealed that the diamonds were in fact stolen,[4] and Skea was arrested several weeks later.[5]

The defendant filed a pretrial motion to suppress evidence of the diamonds, contending that the search was without a warrant, that it did not fall within any recognized exception to the warrant requirement, and that it was not justified by stop and frisk principles enunciated in *Terry* v. *Ohio,* 392 U.S. 1 (1968). The judge denied the motion, ruling that the police had probable cause to arrest Skea for possession of marihuana (G. L. c. 94C, §§ 34, 41 [c]), that his detention for purposes of interrogation and search constituted an arrest by objective standards (the officers had testified that they did not put Skea

_____

have been found that the police had probable cause to believe the diamonds may have been stolen. There was testimony that the previous evening one of the two officers had been dispatcher; that there had been a mugging in which a diamond ring was stolen; that Skea's companion, Thurston, had been in the vicinity of the mugging and had been brought to the victim for identification (without, so far as the record discloses, a positive result); and that there was another unsolved diamond theft from two days before. These facts, coupled with the unusualness of a young man casually carrying around diamonds in his pocket, the fact that Skea could produce no bill of sale or identify the person from whom he claimed to have bought them, and the potential connection between youthful drug use and thievery, all would combine "to warrant a person of reasonable caution in believing that the defendant had committed . . . a crime . . . ." *Commonwealth* v. *Gullick,* 386 Mass. 278, 283 (1982).

[4] The packet of diamonds did not include the one from the ring stolen in the mugging the night before. Rather, the entire packet with its contents had been stolen in a housebreak earlier in the day of the search. Four diamonds had been given to the victim's husband by his employer in recognition of forty years of service. The victim had lost one diamond when she accidentally spilled the contents of the packet. Without knowing for certain what it was, the victim had also added the rhinestone (readily differentiated because of its gilt base) intending to bring all to a jeweler for appraisal and sale.

[5] The record does not disclose whether Thurston was later arrested or charged in connection with the diamonds.

under arrest, but they also testified that he was not "free to leave" until they had searched him), and that the search was therefore valid as a search incident to a lawful arrest. This analysis is faulty, the defendant contends, for two reasons: first, that there was in fact no arrest at the time of the search; and second, that even if there was, it was not based on probable cause.

The second point is without merit. The policemen's observations through the windows of the automobile, in a public parking lot, by themselves involved no search. *Commonwealth* v. *Cavanaugh,* 366 Mass. 277, 281 (1974). *Commonwealth* v. *Ortiz,* 376 Mass. 349, 353 (1978). An officer seeing contraband items, or what reasonably may be thought contraband items, through the window may legitimately seize them. *Texas* v. *Brown,* 460 U.S. 730, 741-744 (1983).[6] *Commonwealth* v. *Irwin,* 391 Mass. 765, 770-771 (1984). *Commonwealth* v. *Cosme,* 15 Mass. App. Ct. 448, 453 (1983). It has been generally held that an officer with experience or training in narcotics, seeing in plain view a handrolled cigarette with pinched ends which his experience teaches him is likely to be marihuana, has probable cause (although he does not then smell the characteristic burning odor) to seize the cigarette, examine it, and investigate for the presence of other controlled substances. See, e.g., *People* v. *Anderson,* 266 Cal. App. 2d 125, 132-133 (1968); *People* v. *Poole,* 48 Cal. App. 3d 881, 885-886 (1975); *Keating* v. *State,* 141 Ga. App. 377, 378-379 (1977); *State* v. *Knowles,* 438 So. 2d 648, 651-652 (La. App. 1983); *In re State in Interest of A.C.,* 115 N.J. Super. 77, 81 (1971); *State* v. *Tillett,* 50 N.C. App. 520, 524-525 (1981).[7] See also *State*

---

[6] *Texas* v. *Brown, supra,* was a plurality decision, but there was no disagreement on the Court as to the propriety of the seizure of the suspected contraband (there, tied, deflated balloons containing heroin). See *id.,* at 746-747 (Powell, J., concurring, joined by Blackmun, J.) and 750 (Stevens, J., concurring, joined by Brennan and Marshall, JJ.). All other Justices joined in the plurality decision.

[7] *Thomas* v. *Superior Court,* 22 Cal. App. 3d 972, 976-977 (1972), which reversed a finding of probable cause, has been limited by subsequent cases to instances where the evidence fails to indicate a basis in training or experience for the officer's suspicion that the possibly innocent object may

v. *Pearson,* 15 Or. App. 1, 10 (1973), and *State* v. *Mahon,* 17 Or. App. 177, 179-180 (1974). "The seizure of property in plain view involves no invasion of privacy and *is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity* (emphasis original)." *Texas* v. *Brown,* 460 U.S. at 741-742, quoting from *Payton* v. *New York,* 445 U.S. 573, 587 (1980). *Sullivan* v. *District Court of Hampshire,* 384 Mass. 736, 742-743 (1981). Probable cause "is a flexible, common-sense standard, [which] merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief', *Carroll* v. *United States,* 267 U.S. 132, 162 (1925), that certain items may be contraband . . .; it does not demand any showing that such a belief be correct or more likely true than false." *Texas* v. *Brown, supra* at 742. *Sullivan* v. *District Court of Hampshire,* 384 Mass. at 743-744.

Under those governing principles, the panel are in agreement that the seizure and examination of the marihuana cigarette lying on the console of the automobile was constitutionally valid. The examination confirmed that it was marihuana. Thurston's denial of ownership, the fact that Skea was the only other person to whom the cigarette could plausibly belong, and his (Skea's) statement, "Give me a break," which could properly be taken as an admission of ownership, all combined to give the police probable cause both to arrest Skea (see G. L.

---

in fact be contraband. See *People* v. *Huntsman,* 152 Cal. App. 3d 1073, 1084-1088 (1984); *People* v. *Walls,* 34 Cal. App. 3d 94, 96-97 (1973). The same distinction is drawn in *People* v. *Wright,* 80 Ill. App. 3d 927, 931 (1980), *People* v. *Barker,* 72 Ill. App. 3d 466, 471 (1979), and *State* v. *Ball,* 124 N.H. 226, 236-237 (1983). The latter case also explicitly rejected the plurality decision in *Texas* v. *Brown, supra,* as a guide to interpreting the unreasonable search provision of New Hampshire's State Constitution (*id.* at 235). *United States* v. *Anderson,* 401 F. Supp. 996, 1000 (E.D. Tenn. 1975), which struck down a search in these circumstances, seems contrary to the weight of authority. In this case the officers had prior experience in narcotics investigation, but we do not necessarily hold that that experience was crucial to a finding of probable cause. See *Sullivan* v. *District Court of Hampshire,* 384 Mass. 736, 743-744 (1981).

c. 94C, § 41) and to search him for additional marihuana or other controlled substances.[8]

The defendant is correct, however, in arguing that the search-incident-to-arrest rationale does not fit with the fact that the defendant was released after the search and was not taken into police custody until several weeks thereafter. Detentions for frisking, questioning, routine traffic stops, and the like, where the detainee is released after the police business is transacted, are treated as "'seizures' of the person," subject to Fourth Amendment scrutiny (see *Terry* v. *Ohio,* 392 U.S. at 16-17; *Cupp* v. *Murphy,* 412 U.S. 291, 294 [1973]), but are differentiated from "formal," or "custodial," arrests, the custodial aspect of which serves as the theoretical justification for the incident search. *United States* v. *Robinson,* 414 U.S. 218, 234-235 (1973).[9] The minimal detention necessary to effect a search of a person is not itself an arrest for purposes of search-incident-to-arrest analysis. If it were, there could be no involuntary search of a person without an arrest, and the concept of an arrest, which has hitherto been held to depend on certain objective criteria,[10] would become functionally indistinguish-

---

[8] It is widely accepted that the discovery of some controlled substances gives probable cause to search for additional controlled substances in the vicinity. See, e.g., *Commonwealth* v. *Blatz,* 9 Mass. App. Ct. 603, 604-605 (1980); *United States* v. *Faulkner,* 547 F.2d 870, 871 (5th Cir. 1977) (per curiam); *United States* v. *Vigil,* 561 F.2d 1316, 1319 (9th Cir. 1977) (per curiam); *Wimberly* v. *Superior Court,* 16 Cal. 3d 557, 564 (1976); *Cooper* v. *Commonwealth,* 577 S.W.2d 34, 37 (Ky. App. 1979).

[9] "It is scarcely open to doubt that the danger to an officer is far greater in the case of the extended exposure which follows the taking of a suspect into custody and transporting him to the police station than in the case of the relatively fleeting contact resulting from the typical *Terry*-type stop. This is an adequate basis for treating all custodial arrests alike for purposes of search justification . . . . [W]e hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment." *Ibid.*

[10] "To constitute an arrest, '[1] there must be an actual or constructive seizure or detention of the person, [2] performed with the intention to effect an arrest and [3] so understood by the person detained . . . .'" *Massachusetts Gen. Hosp.* v. *Revere,* 385 Mass. 772, 778 (1982) (rev'd on other grounds, 463 U.S. 239 [1983]), quoting from *Hicks* v. *United States,* 382 F.2d 158,

able from limited detentions of the type sanctioned in the *Terry* v. *Ohio* line of cases. See *Commonwealth* v. *Cavanaugh,* 366 Mass. 277, 280-281 (1974). The case of *Commonwealth* v. *Avery,* 365 Mass. 59, 65 (1974), on which the Commonwealth relies, turned on quite different principles, the search in that case being contemporaneous with a formal, custodial arrest. In the same vein it was held in *Rawlings* v. *Kentucky,* 448 U.S. 98, 111 (1980), that "[w]here the formal arrest followed quickly on the heels of the challenged search of [the defendant's] person, [it is not] particularly important that the search preceded the arrest rather than vice versa." See discussion by Harlan, J., concurring in *Sibron* v. *New York,* 392 U.S. 40, 76-77 (1968). By contrast, a search cannot be justified as one incident to an arrest occurring at a substantially different time and place. *United States* v. *Chadwick,* 433 U.S. 1, 15 (1977).

The defendant argues that this should be the end of the matter. The search, he argues, being warrantless, was presumptively unconstitutional, *Mincey* v. *Arizona,* 437 U.S. 385, 390 (1978), and it does not appear to fall within any of the other common exceptions to the warrant requirement: automobile search, plain view, inventory search, etc. See *Katz* v. *United States,* 389 U.S. 347, 357 (1967).

That result, however, is disturbing because of the fact that the police officers seem to have acted throughout the episode with both reasonableness and restraint. Their actions were restrained in that they were willing to overlook simple possession of a small amount of marihuana, and again in that they withheld arrest until they ascertained that the diamonds were in fact stolen property. Their actions were reasonable in the sense that they acted on probable cause and exigent circumstances in making the search for additional marihuana. The circumstances were "exigent" in the accepted sense of that word: there was a real "likelihood of imminent loss of the evidence," *Commonwealth* v. *Tarver,* 369 Mass. 302, 308 (1975); for if the officers had adjourned to get a search warrant, any other marihuana or

---

161 (D.C. Cir. 1967), which in turn quotes from a long line of Federal cases. Smith, Criminal Practice and Procedure § 69 (2d ed. 1983).

other controlled substances on the persons of Skea and Thurston would, in all likelihood, have vanished before execution of the warrant. Obviously, the officers could not have anticipated that this situation would arise and sought a warrant in advance. *Commonwealth* v. *Blatz,* 9 Mass. App. Ct. 603, 604-605 (1980). Compare *Commonwealth* v. *Boswell,* 374 Mass. 263, 269-270 (1978); contrast *Commonwealth* v. *Huffman,* 385 Mass. 122, 124-126 (1982).

Must we, then, conclude that, despite having probable cause to believe Skea was in possession of contraband, and despite the unanticipated exigency, the police violated Skea's constitutional right of privacy by searching to recover any hidden contraband? *Katz* v. *United States, supra,* relied on heavily by Skea, is frequently read as suggesting that probable cause and exigency may not be enough to justify a warrantless search: that, in addition, the search must fall within one of several enumerated groups or classes to avoid Fourth Amendment invalidity. "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions" of which three were there listed.[11] 389 U.S. at 357 (footnotes omitted). Cases prior to *Katz* had not adopted such a "closed book" formulation: *McDonald* v. *United States,* 335 U.S. 451, 456 (1948), for example, simply stated that "those who seek exemption from the constitutional mandate [of a warrant must show] that the exigencies of the situation made that course imperative." The *Katz* language has been quoted often, but more recent decisions of the Supreme Court have tended to express the *Katz* principle without implying that there exists a frozen list of exceptions into which any warrantless search must fit as a condition of validity. *Texas* v. *Brown,* 460 U.S. at 735, for example, states, "Our cases hold that procedure by

---

[11] The *Katz* case did not state what the specifically established exceptions were, but cited to cases sustaining warrantless searches of cars stopped on the open highway, a house entered in hot pursuit of a fleeing felon, and a person placed under arrest. *Id.* at 357 n.19.

way of a warrant is preferred, although in a wide range of diverse situations we have recognized flexible, common-sense exceptions to this requirement."[12] Intuitively, we are reluctant to acknowledge that there may be situations where the police are unable to act validly despite having probable cause and exigent circumstances. So far as we can ascertain, at least in the range of cases where the exigency is not itself the product of police delay,[13] the Supreme Court has never suggested that the police would be powerless in such a situation. To the con-

---

[12] *Texas* v. *Brown, supra,* 460 U.S. at 735-736, listed ten exceptions to the warrant requirement: hot pursuit *(Warden* v. *Hayden,* 387 U.S. 294 [1967]); exigent circumstances in house search *(United States* v. *Jeffers,* 342 U.S. 48 [1951]); automobile search *(United States* v. *Ross,* 456 U.S. 798 [1982]); search of person and surrounding area incident to arrest *(Chimel* v. *California,* 395 U.S. 752 [1969]; *United States* v. *Robinson,* 414 U.S. 218 [1973]; *New York* v. *Belton,* 453 U.S. 454 [1981]); search at border or "functional equivalent" *(Almeida-Sanchez* v. *United States,* 413 U.S. 266 [1973]); consent *(Zap* v. *United States,* 328 U.S. 624 [1946]); stop and frisk *[Terry* v. *Ohio,* 392 U.S. 1 [1968]); seizure for questioning *(United States* v. *Brignoni-Ponce,* 422 U.S. 873 [1975]); roadblock *(Delaware* v. *Prouse,* 440 U.S. 648 [1979]); and "plain view" *(Coolidge* v. *New Hampshire,* 403 U.S. 443 [1971]). Others that might have been listed include: administrative searches *(Donovan* v. *Dewey,* 452 U.S. 594 [1981]); abandoned property *(Abel* v. *United States,* 362 U.S. 217 [1960]); search or seizure to prevent the destruction of evidence *(Johnson* v. *United States,* 333 U.S. 10 [1948]; *United States* v. *Jeffers, supra; Schmerber* v. *California,* 384 U.S. 757 [1966]; *Cupp* v. *Murphy,* 412 U.S. 291 [1973]; *Michigan* v. *Tyler,* 436 U.S. 499 [1978]); emergencies *(McDonald* v. *United States,* 335 U.S. 451 [1948]; *United States* v. *Jeffers, supra; Michigan* v. *Tyler,* 436 U.S. 499 [1978]; and *Mincey* v. *Arizona,* 437 U.S. 385 [1978]); inventory search of arrestee *(United States* v. *Edwards,* 415 U.S. 800 [1974]; *Illinois* v. *Lafayette,* 462 U.S. 640 [1983]; inventory of impounded automobile *(South Dakota* v. *Opperman,* 428 U.S. 364 [1976]); public safety *(Cady* v. *Dombrowski,* 413 U.S. 433 [1973]); search or seizure to prevent the removal of evidence from the jurisdiction *(Johnson* v. *United States, supra; Trupiano* v. *United States,* 334 U.S. 699 [1948]; *United States* v. *Jeffers, supra; Chapman* v. *United States,* 365 U.S. 610 [1961]; and *Florida* v. *Royer,* 460 U.S. 491 [1983]); and seizure of residents while search warrant of home is executed *(Michigan* v. *Summers,* 452 U.S. 692 [1981]).

[13] See *Trupiano* v. *United States,* 334 U.S. 699, 706-710 (1948); *McDonald* v. *United States,* 335 U.S. 451, 454-456 (1948); *Vale* v. *Louisiana,* 399 U.S. 30, 35 (1970); *Commonwealth* v. *Forde,* 367 Mass. 798, 803, 808-809 (1975) (Hennessey, J., concurring); *Commonwealth* v. *Boswell,* 374 Mass. 263, 269 (1978).

trary, the Supreme Court has recently emphasized that the question is not foreclosed by its prior decisions. *Michigan* v. *Long,* 463 U.S. 1032, 1035 n.1 (1983) (also Brennan, J., dissenting at 1057 n.4). Moreover, in *Roaden* v. *Kentucky,* 413 U.S. 496, 505 (1973), the Chief Justice, writing for the majority, implied precisely the opposite: "Where there are exigent circumstances in which police action literally must be 'now or never' to preserve the evidence of the crime, it is reasonable to permit action without prior judicial evaluation" (footnote omitted). To hold that the police, despite having probable cause and exigent circumstances, were nevertheless not empowered to search Skea's person for additional marihuana or other controlled substances would thus go beyond what has been settled by the Supreme Court's own cases and would seemingly be at variance with that Court's formulation in *Roaden.*

It is suggested that the police were not caught in such a dilemma: that, having probable cause to arrest Skea, they could have effected a valid search of his person by simply placing him under arrest. Doubtless that would have been the legally safer course. The suggestion is nonetheless odious, because it counsels a greater intrusion on the suspect's liberty, a formal arrest, to justify the lesser intrusion of a search, see 2 LaFave, Search and Seizure § 5.4, at 344 (1978), and thus distorts the intended protections of the Fourth Amendment into an instrument of oppression.[14] A requirement of a validating arrest cannot

---

[14] In *People* v. *Simon,* 45 Cal. 2d 645, 648 (1955) (quoted in 2 LaFave, Search and Seizure § 5.34, at 338 [1978], Traynor, J. (later Chief Justice), stated:

"Thus, if the officer is entitled to make an arrest on the basis of information available to him before he searches, and as an incident to that arrest is entitled to make a reasonable search of the person arrested . . ., there is nothing unreasonable in his conduct if he makes the search before instead of after the arrest. In fact, if the person searched is innocent and the search convinces the officer that his reasonable belief to the contrary is erroneous, it is to the advantage of the person searched not to be arrested. On the other hand, if he is not innocent or the search does not establish his innocence, the security of his person, house, papers, or effects suffers no more from a search preceding his arrest than it would from the same search following it."

plausibly be thought to serve the purpose of deterring searches, where it is settled (by the *Rawlings* case, *supra*) that the search incident to an arrest may validly precede the arrest. Under that principle, it cannot be said that Skea's constitutional rights were violated when he was first searched; if he had been arrested immediately afterwards (if not on probable cause with respect to the diamonds then on the basis of the single marihuana cigarette), no question could now arise as to the constitutional validity of the search. It is thus apparent that the defendant is contending for a nonsense proposition: that his constitutional rights were violated at the moment when the police decided not to arrest him and instead let him go.

The possibility of a validating arrest, moreover, would not resolve the dilemma in every case. It is doubtless usual that the same information that constitutes probable cause to search also establishes probable cause to arrest; but there is no necessary correlation between the two. For example, the facts known to the police officers may indicate that an innocent person has been given counterfeit bills in his change or may have purchased stolen merchandise from an antique dealer. A shoplifter or pickpocket, suspecting he is under surveillance, may stash the loot in an innocent person's pocket or purse, or a child or person known to the police not to be responsible for his actions may be thought to be in possession of narcotics or other contraband. In each of these cases the police would lack probable cause to arrest (i.e., to think the person guilty of a crime) but would have probable cause to search for the contraband.

It has never been doubted that probable cause and exigent circumstances give constitutional justification for a warrantless search of a residence. The principle is recognized in such cases as *Johnson* v. *United States,* 333 U.S. 10, 14-15 (1948), *McDonald* v. *United States,* 335 U.S. at 454-456; *Vale* v. *Louisiana,* 399 U.S. 30, 34-35 (1970), *Commonwealth* v. *Hall,* 366 Mass. 790, 800-804 (1975), *Commonwealth* v. *Forde,* 367 Mass. 798, 804-805 (1975), *Commonwealth* v. *Huffman,* 385 Mass. at 124-126 (1982), *Commonwealth* v. *Pietrass,* 392 Mass. 892, 898 (1984), and *Commonwealth* v. *Amaral,* 16 Mass. App. Ct. 230, 233 (1983), although in each of those

cases, except the last, the circumstances were held not suffi-ciently exigent to excuse getting a warrant. A search of a home is surely not subject to lesser Fourth Amendment concern than a search of a person. See *Welsh* v. *Wisconsin,* 466 U.S. 740, 748 (1984) ("[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is di-rected," quoting from *United States* v. *United States District Court,* 407 U.S. 297, 313 [1972]); *Payton* v. *New York,* 445 U.S. 573, 589-590 (1980). We think it can be said generally, if not categorically, that a limited search of a man's person is a lesser invasion of his privacy than a search of his home and papers.

It may reasonably be objected that, if probable cause and exigent circumstances, without an arrest, may justify the search of a person, then such an exception would by now have found articulation in the Federal cases. To this objection there are two answers. First, the situation rarely arises in which the rationale of probable cause and exigent circumstances must be pressed into service. As has been observed, the same probable cause that justifies a search normally justifies an arrest as well. Where contraband is found, an arrest will generally follow. Where it is not, the suspect is either released to go on his way, nothing more being heard of the matter; or, if he is arrested, no issue is later made of the search precisely because it uncov-ered no contraband or other matter to be offered in evidence. In either case, the validity of the search can be raised in a private civil action, see *United States* v. *Ross,* 456 U.S. 798, 823 n.32 (1982), citing *Monroe* v. *Pape,* 365 U.S. 167 (1961),[15] but the unlikelihood of that occurring was one of the

---

[15] The possibility of a civil action for damages highlights the conceptual problems inherent in the view that probable cause without an arrest cannot justify a warrantless search of a person. If a police officer has probable cause to believe a suspect on the street is carrying, say, heroin, it is clear from *Rawlings* that he is not required first to arrest, then to search. He may instead begin with the search (see *Sibron* v. *New York,* 392 U.S. at 77, Harlan, J., concurring), and, on finding the heroin, arrest. See *Ybarra* v. *Illinois,* 444 U.S. 85, 105 (1979) (Rehnquist, J., dissenting). If he fails to find heroin, however, he should not be permitted to make an arrest, because probable cause no longer exists. Being deprived of the power to make a valid

original reasons for the adoption of the exclusionary rule. See *Wolf* v. *Colorado,* 338 U.S. 25, 41-44 (1949) (Murphy, J., dissenting); *Mapp* v. *Ohio,* 367 U.S. 643, 652-653 (1961). It is the rare case where the officer searches, finds something incriminating, and, as here, does not follow up with an arrest.[16]

The second answer is that, in those rare cases that have arisen, the validity of the search has in fact been upheld on exigency analysis. In *Cupp* v. *Murphy,* 412 U.S. 291 (1973), where the police had probable cause to believe Murphy had strangled his· wife, their act of scraping his fingernails for evidence of blood and skin was held proper despite the fact that they did not arrest him for nearly another month. The analytical significance of there having been no formal arrest was that "a full *Chimel* [v. *California,* 395 U.S. 752 (1969)] search would [not] have been justified"; but the police were held "justified . . . in subjecting [Murphy] to the very limited search necessary to preserve the highly evanescent evidence they found under his fingernails . . . ." *Id.* at 296. We read *Cupp* v. *Murphy* as authorizing a search of the person, without arrest, for evidence which the police have probable cause to believe is on his person, so long as the search does not exceed in scope that which is justified by probable cause and necessitated by exigency. The evidence in *Cupp,* to be sure, was "highly evanescent"; but no less so is any evidence which an alerted suspect can dispose of if the police should wait to act until they have obtained a warrant. 2 LaFave, *supra* § 5.4, at 341.

---

arrest, is the officer then exposed to civil liability because he cannot justify the search as one incident to an arrest? The answer to the dilemma should be found in the well-established principle that the validity of a search does not turn on what it in fact uncovers, or fails to uncover, but rather on the facts known to the officer at its inception. *United States* v. *DiRe,* 332 U.S. 581, 595 (1948). *Bumper* v. *North Carolina,* 391 U.S. 543, 548 n.10 (1968). *Whiteley* v. *Warden,* 401 U.S. 560, 567 n.11 (1971). Viewed from its inception, the search would be valid simply because it was based on probable cause and exigent circumstances.

[16] One such case was *Commonwealth* v. *Cantalupo,* 380 Mass. 173 (1980). There the court (per Hennessey, C.J.) suggested that the search of a person might have been justified by probable cause and exigent circumstances but that, on the particular facts, there was no probable cause. *Id.* at 175.

In *United States* v. *Hand,* 516 F.2d 472, 474-476 (5th Cir. 1975), cert. denied, 424 U.S. 953 (1976), the court sanctioned the search of an embezzler's handbags which were about to be removed from her office. There was no arrest, but the search was held justified, on analogy to automobile searches, by probable cause and exigent circumstances. So also in *United States* v. *Juarez,* 573 F.2d 267, 274-276 (5th Cir.), cert. denied, 439 U.S. 915 (1978), where a drug trafficker was searched for marked bills without an arrest; in *United States* v. *Rizzo,* 583 F.2d 907, 910 (7th Cir. 1978), cert. denied, 440 U.S. 908 (1979), where a tape cassette was seized from a person engaged in unlawful wiretapping without an arrest; and in *State* v. *Badger,* 141 Vt. 430, 445-447 (1982), where the police in the course of a homicide investigation seized blood-stained sneakers without effecting an arrest of the person who wore them. The same rationale was adopted in *United States* v. *Blair,* 366 F. Supp. 1036, 1039-1040 (D.S.D. 1973), and *Dixon* v. *State,* 343 So.2d 1345, 1347-1348 (Fla. Dist. Ct. App. 1977), where, however, an arrest followed the contested search for narcotics. (It was not then settled that a search prior to an arrest could be treated as an incident search.) The same result, but with somewhat different reasoning, was employed in *United States* v. *Riggs,* 474 F.2d 699, 704 (2d Cir.), cert. denied, 414 U.S. 820 (1973), in which Friendly, C.J., adopted the approach of Traynor, J., in *People* v. *Simon,* 45 Cal. 2d 645, 648 (1955) (see note 14, *supra*), in analyzing a search and seizure as one justified by probable cause to arrest. See also *United States* v. *Jenkins,* 496 F.2d 57, 72-73 (2d Cir. 1974), cert. denied, 420 U.S. 925 (1975), following the rationale of *Riggs.*

Substantially the same rationale has been adopted in recent narcotics cases involving luggage seizures. In *United States* v. *Place,* 462 U.S. 696, 705 (1983), it was held that police officers may briefly detain luggage on *Terry*-type reasonable suspicion, in order to subject it to a sniffing test by a dog trained to alert at the odor of drugs. *Id.,* at 707. The sniffing test is not regarded as a search. *Id.* at 708-709. Anything longer than a brief detention, unless consensual, was held to be a seizure which cannot be valid unless justified by probable

cause. "Where law enforcement authorities have probable cause to believe that a container holds contraband or evidence of a crime, but have not secured a warrant, the Court has interpreted the [Fourth] Amendment to permit seizure of the property, pending issuance of a warrant to examine its contents, if the exigencies of the circumstances demand it or some other recognized exception to the warrant requirement is present." *Id*. at 701. The suggestion that a warrant may be necessary to search inside the container is the outgrowth of a separate line of cases, beginning with *United States* v. *Chadwick,* 433 U.S. 1 (1977), which held that the opening of a footlocker (as opposed to its initial seizure[17]) demanded separate showing of exigency in order to justify a search without a warrant. For present purposes, however, the significant fact is that seizure of the luggage from a person who was not placed under arrest was held justified by probable cause to believe it contained contraband, coupled with exigent circumstances, inherent in the fact that the luggage was mobile and its owner was not under arrest. A warrantless seizure of a suitcase, based on probable cause, from a person not placed under arrest has since been held valid in *United States* v. *Jodoin,* 672 F.2d 232 (1st Cir. 1982). Compare *United States* v. *West,* 731 F.2d 90 (1st Cir. 1984), in which a holding back of luggage was held brief enough to qualify as a mere detention supportable on *Terry* principles. In the present case, of course, because no container is involved, there could be no possibility of a seizure without a warrant and a later search based on a warrant. The police officers' choices were limited to two: search now or never.

Concededly, the examples are few of cases where searches of or seizures from persons have been justified on the basis of

---

[17] In the *Chadwick* case itself the constitutional justification for the seizure of the footlocker was not in issue because its owners were arrested and the footlocker seized incident to the arrests. 433 U.S. at 13-15. The opening of the footlocker could not be so justified, however, because it occurred hours later. In *United States* v. *Johnson,* 467 F.2d 630, 639 (2d Cir. 1972), cert. denied sub nom. *White* v. *United States,* 410 U.S. 932 (1973), the opening and search of a sealed container was held justified by exigent circumstances and probable cause, although the owner had been arrested at another time and place.

probable cause and exigent circumstances. The likely reason is, as explained above, that in the great majority of cases the police either find nothing or effect an arrest. But the general principle is implicitly recognized in numerous decisions, almost in passing. See, e.g., *Florida* v. *Royer,* 460 U.S. 491, 497 (1983) (plurality opinion of White, J.): "[I]t is unquestioned that without a warrant to search Royer's luggage *and in the absence of probable cause and exigent circumstances,* the validity of the search depended on Royer's purported consent" (emphasis added); *United States* v. *Ross,* 456 U.S. at 807 ("the general rule that '[i]n cases where the securing of a warrant is reasonably practicable, it must be used,'" quoting from *Carroll* v. *United States,* 267 U.S. at 156); *Roaden* v. *Kentucky,* quoted above at 694, *supra.* See also *Johnson* v. *United States,* 333 U.S. 10, 14-15 (1948). Where the Supreme Court has never held that probable cause and exigent circumstances alone cannot justify a search of a person; where it has expressed the view that its own prior decisions do not foreclose that rationale for a search (see *Michigan* v. *Long,* 463 U.S. at 1035 n.1); where a contrary view would have no significant impact in curtailing searches but rather a tendency to increase arrests; and where the facts of the present case preclude sustaining the validity of the search on any more widely accepted basis; we must proceed on what we regard to be the sound rule. We therefore hold that the search of Skea's person was constitutionally justified by probable cause to believe he carried marihuana or other controlled substances, coupled with exigent circumstances, inherent in the fact that any contraband he carried would be unavailable to the police unless it were then taken into their control.[18]

---

[18] We have found only one case which, on comparable facts, reached a contrary result. In *People* v. *Evans,* 43 N.Y. 2d 160 (1977), at 165, the court reasoned: "An arrest is an essential requisite to a search incident, otherwise once probable cause existed a potential arrestee would be fair game for any intrusions the police deem appropriate for however long they allow him to remain at large." That is a valid theoretical objection to basing a power to search on probable cause to arrest (without an actual arrest), but it is not a valid objection to a search based on probable cause to believe

On general principles, a search justified by probable cause to search and exigent circumstances must be limited in scope to those areas of the person and his clothing which could reasonably be thought to contain the items sought. See *Chimel v. California,* 395 U.S. at 762, quoting from *Terry v. Ohio,* 392 U.S. at 19. See also *Commonwealth v. Sumerlin,* 393 Mass. 127, 130 (1984). Such a search thus differs from one made incident to an arrest, which, under the holding of *United States v. Robinson,* 414 U.S. at 235, justifies a full body search even in the absence of probable cause to think that it may uncover weapons, contraband, or evidence. Indeed, the incident search may, under *New York v. Belton,* 453 U.S. 454, 460 (1981), apparently extend to the entire passenger compartment of an automobile. Where there is no arrest, the special dangers encountered by an arresting officer are not present. The search must, in consequence, be appropriately limited.

Here, because search was for marihuana or other controlled substances, its permissible scope was necessarily broad. *Commonwealth v. Cantalupo,* 380 Mass. 173, 179 (1980). It certainly included Skea's pockets and the examination of the contents of the cellophane envelope. As the search was constitutionally permissible in objective and scope, the diamonds were admissible in evidence although their discovery was wholly unanticipated.[19] *United States v. Wysocki,* 457 F.2d 1155, 1160

---

a person carries contraband (i.e., probable cause to search), coupled with exigent circumstances. If the police had not searched Skea in the parking lot when they spotted the marihuana cigarette, but had waited to a later time, without added facts probable cause and exigent circumstances would have dissipated. Our disagreement with the *Evans* case is not with its holding (that the search could not be justified as incident to an arrest that was not made) but with its failure to examine whether the search could be independently justified by probable cause to search and exigent circumstances. *People v. Evans* is analyzed and criticized in LaFave, *supra,* § 5.4, at 340 n.12.

[19] Correctly, the defendant does not argue that the diamonds were inadmissible under G. L. c. 276, § 1. That statute was enacted in response to *United States v. Robinson, supra,* which established that a search incident to a valid custodial arrest was not limited by probable cause to believe the search would uncover weapons, contraband, or evidence of the crime which furnished the basis for the arrest. *Commonwealth v. Wilson,* 389 Mass. 115, 118 (1983). Given broad statutory power to arrest for traffic offenses (G. L. c. 90,

(5th Cir.), cert. denied, 409 U.S. 859 (1972); *United States* v. *Gorman,* 637 F.2d 352, 353-354 (5th Cir. 1981) (per curiam); *United States* v. *Marbury,* 732 F.2d 390, 399 n.12 (5th Cir. 1984).

*Judgment affirmed.*

---

§ 21) and various misdemeanors (see e.g., G. L. c. 276, § 28; G. L. c. 272, §§ 54, 59, 60), pretext searches, not based on genuine and reasonable concern for concealed weapons or destruction of evidence, were the evil intended to be curbed. Where there is probable cause to search a person (i.e., reasonable grounds to think that person may be carrying weapons, contraband, or evidence of crime), the concern that led to the enactment of the statute is not implicated. The validity of such a search, as we have held does not turn on its having been incidental to arrest. If a search has a constitutionally permissible basis other than search incident to arrest, it falls outside the provisions of G. L. c. 276, § 1. *Commonwealth* v. *Toole,* 389 Mass. 159, 162 (1983). *Commonwealth* v. *King,* 389 Mass. 233, 246 n.16 (1983).