*Anne M. Kendall* for the Commonwealth.

COMMONWEALTH *vs.* DENNIS CHAVIS. No. 95-P-1492. September 19, 1996. *Probable Cause. Constitutional Law,* Probable cause. *Search and Seizure,* Probable cause, Arrest, Threshold police inquiry. *Arrest.*

By leave of a single justice of the Supreme Judicial Court, the Commonwealth has appealed from an order of a Superior Court judge suppressing as evidence stolen jewelry found on the person of the defendant. See Mass.R.Crim.P. 15(b)(2), 378 Mass. 884 (1979). We conclude that the order was error, that it is to be reversed, and that the stolen property may be received in evidence at trial.

In stating the salient facts we draw largely on findings made by the Superior Court judge who conducted the suppression hearing, with some supplementation from the transcript of the hearing on the motion. Shortly before noon on August 5, 1993, a postal carrier had alerted Janice Raymond to "a possible problem" at the residence of her relatives and neighbors, the McDougalds, who lived at 475 Cross Street in Boylston. Raymond at once drove to that house with her daughter and spotted a car not familiar to her behind the house. She dispatched her daughter to report potential trouble to the McDougalds' son, who lived next door. As a next step, Raymond angled her car athwart the driveway to block passage of the unknown vehicle, which was leaving by the driveway. Raymond saw in that vehicle three men in the twenty-to-thirty-year range, all with short black hair. She focused her attention on the driver and front seat passenger. The driver, she observed from her close vantage, had a thin head and crooked nose; the passenger was heavier of body and build. Raymond asked the men if she could "help them." They appeared to her to be agitated and hurried, and without saying anything, maneuvered around her and "took off very quickly." She wrote down the registration number of the car and went directly to the house next door to which she had sent her daughter. There she found her cousin, the McDougalds' son, in the process of talking to the police. Through him she relayed to the police the color of the car (dark), make (Chrysler), and registration number (934-GJG), as well as a description of the three men. That report was logged in with the Boylston police as having been made at 12:02 P.M.

A police officer (Berg) responded to the 475 Cross Street address within three to four minutes. He, together with the McDougalds' son, inspected the inside of the house and found it had been broken into and ransacked. In the meantime, the Boylston police headquarters had checked out the car

---

registration Raymond had provided to them and traced the car — a black 1985 Chrysler LeBaron — to Tracy Sadler of 11 Glenwood Street, Worcester. That information the Boylston police relayed to the Worcester police, who dispatched a detective (Belzarian) to Sadler's address. Detective Belzarian, working from an unmarked vehicle, noticed a black Chrysler, with the reported registration, parked across the street from 11 Glenwood Street. He also noticed two men approximating the descriptions he had received standing in front of 11 Glenwood Street. Belzarian recognized them from prior encounters as Charles Watkins and Dennis Chavis, the defendant. A woman emerged from 11 Glenwood Street and, after a short conversation with Watkins and Chavis, drove off in the black Chrysler. After following her briefly, Belzarian stopped her. She identified herself as Tracy Sadler. Had she been in Boylston half an hour earlier that day, Belzarian asked her. She replied that she had not but that until ten minutes earlier, the car had been used by her friend, Tim Crossley, who had been off with two other men. One of them was Watkins. Sadler did not know the name of the third but, when taken back to her residence by Belzarian, she identified Chavis, who was still there, as the third man.

Belzarian called his dispatcher and asked that the Boylston police bring their eyewitness (i.e., Raymond) to 11 Glenwoood Street to look over Chavis and Watkins, who had now become suspects. Pending Raymond's arrival on the scene, Belzarian proceeded to "pat down" search those two men for weapons and stolen property. In the course of frisking Chavis, Belzarian felt a "square type object" that he thought might contain jewelry. He asked Chavis to empty his pockets. A box came out that, when opened by Belzarian, disclosed jewelry. Belzarian then had Watkins empty his pockets, producing some more jewelry. The judge included in her findings that at the time of the search, neither Chavis nor Watkins was free to leave.[1] See *Commonwealth* v. *Borges*, 395 Mass. 788, 791 (1985). Smith, Criminal Practice and Procedure § 305 (1996 Supp.). Compare *Commonwealth* v. *Wedderburn*, 36 Mass. App. Ct. 558, 561 (1994).

The motion judge had no difficulty concluding that the license number of the getaway car and the presence of men resembling the descriptions given by Raymond gave Detective Belzarian solid articulable grounds to stop Chavis and Watkins and to conduct a field interrogation about the Boylston burglary. See *Terry* v. *Ohio*, 392 U.S. 1, 27 (1968); *Commonwealth* v. *Moses*, 408 Mass. 136, 140 (1990); *Commonwealth* v. *Patti*, 31 Mass. App. Ct. 440, 441-442 (1991). The judge balked, however, at thinking that the pat down search was justified. Belzarian, in her view, did not have articulable grounds to think that the two men might be armed, and that his safety or that of others might be on the line. This was not a case in which the police officer was outnumbered by the suspects, thereby increasing the peril to the officer. There were three additional detectives in plain clothes in a nearby unmarked car. Compare *Commonwealth* v. *Andrews*, 34 Mass. App. Ct. 324, 328-329 (1993). Because we conclude that Belzarian had probable cause to arrest and search Chavis, we need not decide whether Belzarian could conduct a lawful frisk of Chavis under the principles that govern threshold stops and inquiries.

---

[1]Raymond showed up shortly thereafter and identified Chavis and Watkins as two of the men she had observed leaving the McDougald premises in a hurry. A motion by Chavis to suppress Raymond's identification of him was denied.

Detective Belzarian had more than is required to justify a threshold inquiry; he had probable cause to arrest and search Chavis and Watkins. The car described as involved with the getaway from the burglary just one half hour earlier had been used by the defendant and his two known companions during the period of the burglary and had just ten minutes before been returned to its owner. This constituted powerful evidence that Chavis and Watkins were connected with the Boylston burglary. See *Commonwealth* v. *Brown*, 367 Mass. 24, 33 (1975) (similar facts thought to have provided "ample probable cause" for arrest and warrantless search). There were other factors. The black Chrysler automobile, which Belzarian had looked into, seemed not to contain any stolen goods. Chavis was known to the police from previous encounters with the criminal law. It was reasonable to infer that stolen items were still on the persons of Chavis and Watkins and that they were still actively engaged in the completion of their larceny, disposing of the stolen goods. On those facts, Detective Belzarian would rationally suspect criminal involvement by Chavis and Watkins in the criminal act that had been reported. *Commonwealth* v. *Bond*, 375 Mass. 201, 210 (1978). *Commonwealth* v. *Santaliz*, 413 Mass. 238, 241 (1992). *Commonwealth* v. *Rivera*, 27 Mass. App. Ct. 41, 44-46 (1989). See *Sullivan* v. *District Ct. of Hampshire*, 384 Mass. 736, 744 (1981) (requirement of probable cause is satisfied by showing facts that would warrant a reasonable person in thinking that action is appropriate). See also *Commonwealth* v. *Alvarado*, 420 Mass. 542, 547-550 (1995); *Commonwealth* v. *Claiborne*, 423 Mass. 275, 279 (1996). With probable cause to arrest Chavis, the search was proper as one incident to arrest, to the end of preventing destruction or concealment of "evidence of the crime for which the police have probable cause to arrest." Smith, Criminal Practice and Procedure § 238 (1996 Supp.). An element of arrest, that Chavis and Watkins could not freely leave, see *Commonwealth* v. *Wedderburn*, 36 Mass. App. Ct. at 561, was present.[2] In any event, when, as here, a formal arrest followed immediately after the challenged search, it is not significant that the search preceded the arrest. *Rawlings* v. *Kentucky*, 448 U.S. 98, 111 (1980). *Commonwealth* v. *Skea*, 18 Mass. App. Ct. 685, 691 (1984).

For the reasons stated, the order suppressing as evidence against Chavis the jewelry recovered from the person of Chavis, which was also identified as coming from the house at 475 Cross Street in Boylston, is reversed.

*So ordered.*

*Christopher P. Hodgens*, Assistant District Attorney, for the Commonwealth.

*Margaret R. Guzman*, Committee for Public Counsel Services, for the defendant.

---

[2]Some detentions, such as one to stop and frisk, of course fall short of an arrest. See *Commonwealth* v. *Skea*, 18 Mass. App. Ct. 685, 690 n.10 (1984).