Gants, J.
The defendant, Rudolph Mariano (“Mariano”), has been indicted by a Worcester Grand Jury for allegedly possessing cocaine with an intent to distribute and for doing so within 1,000 feet of a school, in violation of G.L.c. 94C, §§32A(a) and 32J. Both of these indictments arose from a warrantless search that was done of the defendant’s person by Detective Joseph Siciliano of the Leominster Police Department on December 8, 1997 at Montgomery’s Lounge in Leominster, in which a baggie containing 13.6 grams of cocaine was seized.
The defendant now seeks to suppress the cocaine seized from him during that warrantless search, claiming violations of his rights under the Fourth Amendment to the United States Constitution and Article XIV of the Massachusetts Declaration of Rights. This Court held an evidentiary hearing on this suppression motion on May 12, 1998, and heard testimony from Detective Siciliano and the defendant. For the reasons set forth below, the defendant’s motion to suppress is DENIED.
FINDINGS OF FACT
Based upon the credible testimony of the witnesses and reasonable inferences drawn from that testimony, I find the facts as follow:
On December 8, 1997, between 7:00 and 7:30 p.m., Detective Siciliano was “beeped” on his pager by an individual who had been a confidential informant of the Detective for roughly six months. This confidential informant (whom I will call the “Cl”) prior to December 8, 1997 had provided information leading to the seizure of drugs and the subsequent arrests of two other individuals — Jose Mota and Steven Brassard. In both of these cases, the Cl had provided information that was accurate regarding the location of contraband. At the time of the hearing, Mr. Mota was in default regarding his narcotics charges and Mr. Brassard was *426 scheduled for trial on May 20, 1998, so neither of these cases had yet to result in a conviction for reasons that said nothing about the credibility of the Cl.[1]
Within a few minutes of being paged, Detective Siciliano telephoned and spoke with the Cl. The Cl told the Detective that a white male with a gray beard, roughly fifty years old, named Rudy Mariano, driving a purplish-red Chrysler[2] would show up at Montgomeiy’s Lounge (“the Lounge”) in the next ten to fifteen minutes. The Cl said that Mr. Mariano was going to deliver cocaine to someone at the Lounge via the back door of the Lounge. The Cl told the Detective that this information was learned from overhearing a conversation.[3]
After this telephone conversation with the Cl, Detective Siciliano drove to the police station, picked up an unmarked car, and drove to the back parking lot of Montgomeiy’s Lounge. He was at the Lounge roughly ten minutes after he was first beeped by the CI. During this ten minutes, he arranged for police back-up: those assisting officers, who were in uniform, were told to remain nearby outside the Lounge.
Roughly five or ten minutes after Detective Siciliano parked his car in the rear parking lot of the Lounge, he observed a purplish-red 1994 Chiysler New Yorker drive into the same lot. An individual who matched the Cl’s description, later identified as the defendant, exited the car and walked into the Lounge via the back door. After Detective Siciliano, who was in plain clothes, saw the defendant enter the Lounge, he instructed the two back-up officers, who were in uniform, to come into the Lounge through the back door. Detective Siciliano then entered the Lounge himself. The Detective watched the defendant, who was leaning on the bar of the Lounge; he saw no exchange of money or drugs. The Detective approached the defendant, showed him his badge, and asked him to step over towards the ladies room, which was an open area away from the bar. The two uniformed officers by then were present in the Lounge, standing with the Detective. The Detective informed the defendant of his Miranda rights and asked him who he was. The defendant said he was Rudolph Mariano. The Detective then told Mr. Mariano that he had information that Mariano had drugs on his person. The defendant appeared nervous — moving quite a bit and touching his clothing. The Detective then searched the defendant’s person and found a baggie in the defendant’s left jacket pocket, which the Detective believed contained cocaine, and which indeed did contain 13.6 grams of cocaine. He then placed the defendant under arrest, cuffed him, and again gave him his Miranda rights.[4]
CONCLUSIONS OF LAW
The Commonwealth proffers two separate and independent grounds to justify this warrantless search. First, it argues that the search was incident to the arrest of the defendant, and that the arrest was supported by probable cause. Second, it argues that the Detective had probable cause to search the defendant’s person and that the exigencies of the circumstances here permitted the search to be performed without a search warrant. I reject the first ground and adopt the second: I find that the search was not conducted incident to the arrest of the defendant, but thatitwas supported by probable cause, and that there were exigent circumstances that permitted the defendant’s person to be searched without a warrant.[5]
The Existence of Probable Cause
Since both of these claimed justifications for the search Eire premised on the existence of probable cause, the first step in my analysis must be to determine whether Detective Siciliano had probable cause to arrest the defendant for the possession of cocaine with intent to distribute (or simply the possession of cocaine) or probable cause to believe that the defendant was in possession of cocaine at the time of the search.
Under Article 14 of the Declaration of Rights of the Constitution of the Commonwealth, probable cause may not be determined under the “totality of the circumstances" test that the United States Supreme Court established to determine whether probable cause is found under the Fourth Amendment to the United States Constitution. Compare Commonwealth v. Upton, 394 Mass. 363, 371 (1985) (Upton II), with Illinois v. Gates, 462 U.S. 213 (1983). Rather, the Supreme Judicial Court, finding the “totality of circumstances” test to be “unacceptably shapeless and permissive,” Commonwealth v. Upton, 390 Mass. 562, 574 (1983) (Upton I), reversed on other grounds in Massachusetts v. Upton, 466 U.S. 727, 104 S.Ct. 2085 (1984), required that both prongs of the AguilarSpinellitest be satisfied: the veracity test and the basis of knowledge test. Upton II, 394 Mass. at 374-76. See also Aguilar v. Texas, 378 U.S. 108 (1964); Spinelli v. United States, 393 U.S. 410 (1969). The veracity test requires that some of the underlying circumstances be shown demonstrating that the person providing the information is credible or his information reliable. Upton II, 394 Mass. at 375. The basis of knowledge test requires that some of the underlying circumstances be shown demonstrating that the informant has a reliable basis for truly knowing the information he has provided. Id. “[Independent police corroboration can make up for deficiencies in either or both prongs of the Aguilar-Spinelli test.” Id. at 376.
The Veracity Test
In cases, like this, involving police informants, the informant’s credibility can be established through information regarding specific past instances in which the informant’s information resulted in successful arrests, seizures, and convictions. Commonwealth v. Kaufman, 381 Mass. 301, 302 (1980). Ideally, this information includes the names of the persons arrested or convicted, the dates of the arrests or convic *427 tions, the identity of the court or courts in which these individuals were prosecuted, a description of any seized contraband, and the precise role the informant played in producing the arrests, seizures of contraband, or convictions. Commonwealth v. Perez-Baez, 410 Mass. 43, 45 & n.2 (1991). This degree of specificity is more an aspiration than a requirement, especially when it would likely result in the revelation of the confidential informant’s identity. Commonwealth v. Shea, 28 Mass.App.Ct. 28, 31 (1989). Yet, the information provided must be more than “[a] naked assertion that in the past the informant has provided information which led to a prior arrest,” Commonwealth v. Rojas, 403 Mass. 483, 486 (1988), or a conclusory reference to prior arrests. See, e.g., Commonwealth v. Brzezinski, 405 Mass. 401, 407 (1989); Commonwealth v. Melendez, 407 Mass. 53, 59 (1990).
The fact that the informant has provided information leading to a prior conviction is sufficient to establish an informant’s veracity, even if stated in a conclusory fashion. Commonwealth v. Amral, 407 Mass. 511, 515 (1990); Commonwealth v. Shea, 28 Mass.App.Ct. at 31-32. Simply because an arrest resulting from an informant’s information had yet to produce a conviction, however, does not disqualify that arrest from forming part of the informant’s “track record” as long as significant prior information provided by the informant was shown to be accurate. Commonwealth v. Lapine, 410 Mass. 38, 41-42 (1991). See also Commonwealth v. Valdez, 402 Mass. 65, 70-71 (1988) (veracity test satisfied by information demonstrating that informant had previously provided information regarding a person’s whereabouts that led to arrest on outstanding warrant). Moreover, the successful recovery of contraband resulting from information provided by an informant is sufficient to establish his veracity, even without an arrest or conviction. Commonwealth v. Mejia, 411 Mass. 108, 113 (1991).
The information known to Detective Siciliano about the informant prior to the December 8, 1997 search was sufficient to satisfy the veracity prong. By that time, the informant had provided information leading to two drug arrests and the successful seizure of drug contraband in both of those cases. In short, at least twice within the past six months, the informant had provided information regarding the location of contraband which turned out to be accurate and led to the drug arrests of two individuals. Based on this prior record, there was good reason to believe the informant credible with respect to the December 8, 1997 information.
The Basis of Knowledge Test
Based on the information presented at the hearing, the Court does not know the basis of the informant’s information; it knows only that it was overheard in conversation. While I may infer from the detail and precision of the information provided that the informant overheard this information from a person with personal knowledge of the information, Spinelli v. United States, 393 U.S. 410, 425 (1969), I am reluctant to do so here, because the prosecution specifically chose not to elicit information at the hearing regarding the basis of the informant’s knowledge. Consequently, this prong can only be satisfied through Detective Siciliano’s corroboration of the details of the information provided by the informant. See, e.g., Commonwealth v. Welch, 420 Mass. 646, 651 (1995).
In this case, there was substantial corroboration of the precise details provided by the Cl prior to the search of the defendant. The Cl said that a purplish-red Chrysler would show up at Montgomery’s Lounge within the next ten to fifteen minutes, and it did. The Cl said that a white male with a gray beard, roughly fifty years old, would enter the Lounge through the back door, and a person meeting that description did precisely that. The Cl said this person was named Rudy Mariano, and the Detective confirmed that he was. The corroboration of this information reflected that the Cl, whatever the source of his or her information, accurately knew who the defendant was and what he was going to do. This is not information available to a casual observer; it describes, not what the defendant was doing at a particular time, but in substantial detail what he was going to be doing in the immediate future. Commonwealth v. Welch, 420 Mass. at 652 (1995) (corroborated predictive information is persuasive evidence of informant’s basis of knowledge and veracity); Commonwealth v. Washington, 39 Mass.App.Ct. 195, 197 (1995) (same). Compare with Commonwealth v. Motta, 34 Mass.App.Ct. 921, 922 (1993) (‘The information supplied by the informant, which was corroborated by police investigation, did not include any specific details about the defendant which were not easily obtainable by an uninformed bystander”). Consequently, the precision of the information given regarding the defendant’s movements within the next fifteen minutes and the corroboration of each of those details by the Detective is enough to satisfy the basis of knowledge test even if it is not clear where this information came from.
Search Incident to Arrest
Based on the Cl’s information, Detective Siciliano had probable cause to arrest the defendant for possession of cocaine with intent to distribute and mere possession of cocaine once he confirmed that the person in the Lounge who met the Cl’s description bore the name given by the CI. As a result, he lawfully could have arrested the defendant on these charges, and searched his person incident to his arrest. If he had done this, he would have located the cocaine on the defendant’s person, and the seizure of this cocaine would be lawful as part of the search incident to arrest. However, this is not what the Detective did, and I find that the search he conducted may not be justified as a search incident to arrest.
*428 I recognize that, under Massachusetts law, “The fact that the search preceded the formal arrest is not important ‘as long as probable cause [to arrest] existed independent of the results of the search.’ ” Commonwealth v. Johnson, 413 Mass. 598, 602 (1992) (quoting Commonwealth v. Santiago, 410 Mass. 737, 742 (1991) and Commonwealth v. Brillante, 399 Mass 152, 154-55 n.5 (1987)). This principle, however, when one examines the cases that espouse it, is premised on two prerequisites, neither of which is met here.
First, the police must have decided to arrest the defendant prior to the search, and taken steps to effectuate that arrest by actually or constructively seizing or detaining him. See, e.g., Rawlings v. Kentucky, 448 U.S. 98, 111 (1980) (the defendant admitted to possessing LSD tablets before search was commenced); Commonwealth v. Johnson, 413 Mass. at 602 (police had pulled the defendant from his vehicle and placed him “effectively under arrest” before searching him); Commonwealth v. Brillante, 399 Mass. at 153 (police had located cocaine beneath the defendant’s car before search commenced). Without this requirement, the police would be permitted to search anyone without a warrant, regardless of exigency, simply by showing that they had probable cause to arrest that person and therefore could have arrested him and searched him incident to arrest, even if they had no such intention to arrest him at that time.
Here, Detective Siciliano did not decide to arrest the defendant until after the search. Indeed, in part for this reason, the Detective is emphatic that he did not cuff the defendant until after he had searched him. Moreover, it would have made no sense for the Detective to have decided to arrest the defendant before the search; if the search had not resulted in the seizure of any narcotics, the only evidence against the defendant would then have been the testimony of the confidential informant, who the Detective did not expect to testify in court. In other words, if the Detective had arrested the defendant and located no drugs, he would have had no admissible evidence to offer at a probable cause hearing or at trial in support of the criminal charges.
Second, probable cause to arrest must exist independent of the results of the search. Commonwealth v. Johnson, 413 Mass. at 602. Here, probable cause did not exist independent of the results of the search of Mr. Mariano’s person; if that search found no narcotics, then the information provided by the Cl would no longer be sufficiently reliable to support probable cause. See Commonwealth v. Skea, 18 Mass.App.Ct. 685, 696 n. 15 (1984). Therefore, it matters a great deal that this search occurred before the defendant’s arrest, because there would have been no arrest if the search had come up empty. This is not a case where the arrest would have taken place regardless of the results of the search, and where it would be meaningless to suppress a search simply because it occurred before rather than after the police uttered the magic words, “You are under arrest.” Rather, this search had nothing to do with the defendant’s subsequent arrest, and cannot be justified as a search incident to that arrest.
Exigent Circumstances
The Commonwealth contends that exigent circumstances were present here that justified the search of the defendant’s person without a warrant. When a search is conducted without a warrant because of alleged exigent circumstances, the burden rests with the Commonwealth to demonstrate that there was an emergency that, under the totality of the circumstances, made it “impracticable” for the police to obtain a warrant. Commonwealth v. Forde, 367 Mass. 798, 800 (1975). See also Commonwealth v. Scalise, 387 Mass. 413, 422 n.8 (1982).
Exigent circumstances may be found when there is a “real ‘likelihood of imminent loss of the evidence’ ” if the police were to seek a warrant and the police could not reasonably have anticipated these circumstances to leave adequate time to seek a warrant in advance. Commonwealth v. Skea, 18 Mass.App.Ct. at 691-92 (quoting Commonwealth v. Tarver, 369 Mass. 302, 208 (1975)). Here, there was a “real likelihood of the imminent loss” of the cocaine if the police had not searched the defendant. According to the information from the Cl, the defendant was going to deliver cocaine to a person at the Lounge within 10 to 15 minutes of the Cl’s telephone call; if Detective Siciliano had prepared a search warrant and affidavit, presented it to a judicial officer authorized to approve the warrant, and then executed it, it is likely that the cocaine would have been long gone and the defendant would have left the Lounge. Nor is there any reason to believe that Detective Siciliano could have anticipated this information and sought a warrant in advance; he did not learn anything about the defendant until the Cl’s telephone call, which preceded by only about ten minutes the scheduled hand-to-hand transfer of cocaine.
Indeed, the only way to have avoided a warrantless search would have been for the Detective to arrest the defendant based on the probable cause he obtained from the informant and then obtain a search warrant, but even this course of action would not likely have resulted in a search warrant because the Detective could then have conducted a warrantless search incident to arrest. As the Appeals Court stated in Commonwealth v. Skea, the suggestion that the law requires a police officer to arrest a suspect in order to search him when there are exigent circumstances is “odious, because it counsels a greater intrusion on the suspect’s liberty, a formal arrest, to justify the lesser intrusion of a search . . . and thus distorts the intended protections of the Fourth Amendment into an instrument of oppression.” 18 Mass.App.Ct. at 694.
While the search of a person under exigent circumstances is not within the usual exceptions to the warrant requirement, this is hardly the first case *429 where it has been recognized. See Id. at 693-00 and cases cited. Indeed, the Appeals Court has held that, where the search of a person was supported by probable cause to believe that he was carrying a controlled substance, a warrantless search of that person may be conducted when there are exigent circumstances, and such exigency is “inherent in the fact that any contraband he carried would be unavailable to the police unless it were then taken into their control.”[6]
ORDER
For the reasons stated above, it is hereby ORDERED that the defendant’s motion to suppress the evidence taken from his person on December 8, 1997 is DENIED.

On May 20, 1998, Mr. Brassard pleaded guilty before me to indictments charging him with possession of cocaine with intent to distribute and possession of marijuana.

Detective Siciliano testified that the Cl also gave him the license plate number of the Chrysler, but I do not credit his memory as to this fact. The Detective testified that he wrote nothing down of what the Cl told him, which would be unusual and unwise if the Cl had given him a license plate number. In addition, the Detective testified that he did not “run” this plate number until after Mr. Mariano’s arrest. If he had the plate number as a result of his conversation with the Cl, one would expect him to have run this plate number as he drove to the Lounge.

The Detective did not testify as to who the Cl had overheard or how this conversation was overheard. The Detective indicated that the Cl was in fear of the defendant, and the Commonwealth informed the Court that it wished to protect the identify of the CL

The defendant testified that the Detective handcuffed him immediately, before he had searched him. I credit the Detective’s testimony that this was not true. I note that the Detective had substantial back-up when he confronted the defendant, and would not have needed to cuff the defendant to ensure his safety. Moreover, I find that the Detective would not have arrested the defendant if he had found no narcotics on his person, so it would have been unlikely that he would have cuffed him before he conducted that search.

I note that the District Attorney’s Office chose not to argue a third separate and independent ground — that the cocaine was found as a result of a weapons frisk of the defendant conducted as the result of a stop supported by reasonable suspicion. This argument was not pursued, despite some testimony of the Detective to support it, because the Assistant District Attorney did not believe it appropriate to ask this Court to find that the Detective’s intent was simply to frisk the defendant for weapons, and that the search of the defendant’s pockets was triggered by the likelihood that the object he felt in the defendant’s pocket was a weapon. I commend the Assistant District Attorney for deciding not to press this argument (which would not have prevailed). See Berger v. United States, 295 U.S. 78, 88 (1935) (a prosecutor “may strike hard blows, [but] he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.”).

The scope of such a warrantless search is limited to those areas of the person and his clothing which "could reasonably be thought to contain the items sought.” Id. at 701. There is no question that the search of the defendant’s person in this case fell within the permissible scope.