COMMONWEALTH vs. FRANK P. ORETO, JR.
(and three companion cases[1]).

Essex.   July 23, 1985. — August 13, 1985.

Present: GREANEY, C.J., ROSE, & SMITH, JJ.

*Constitutional Law*, Search and seizure. *Search and Seizure*, Automobile.

A State trooper acted lawfully in driving his police cruiser alongside another
  automobile as the two vehicles traveled at slow speed on a public way
  about 3:50 A.M., and was justified, despite having no basis in fact to
  stop the vehicle, in shining the cruiser's "alley lights" into its interior,
  whereupon the trooper, observing two men passing back and forth a
  small brownish pipe and smoking what was apparently marihuana, was
  warranted in stopping the vehicle for a threshold inquiry. [584-586]
Motions to suppress a "roach," a quantity of marihuana in a plastic bag, a
  pipe containing marihuana, and a handgun seized by a State trooper as
  the result of a warrantless search of an automobile were improperly
  allowed in circumstances in which the trooper's conduct at each critical
  stage of his investigation was lawful. [586-587]

COMPLAINTS received and sworn to in the Peabody Division
of the District Court Department on April 17, 1984.

Motions to suppress evidence were heard by *Santo J. Ruma*, J.

*Robert H. Scarino*, Assistant District Attorney, for the Com-
monwealth.

*Harry I. Pass* (*Leonard E. Pass* with him) for Frank P.
Oreto, Jr.

*Linda E. Giles* for Michael S. Boozang.

GREANEY, C.J. The Commonwealth appeals, see Mass.R.
Crim.P. 15(a)(2), 378 Mass. 882-883 (1979), from the allow-
ance by a District Court judge of the defendants' motions to

---

[1] Two cases are against Michael S. Boozang and one is against Frank P.
Oreto, Jr.

suppress a "roach," a quantity of marihuana in a plastic bag, a pipe containing marihuana, and a 9 mm. semiautomatic handgun. The contraband was seized from an automobile driven by the defendant Oreto in which the defendant Boozang was a passenger.[2]

The facts found by the judge, supplemented slightly from undisputed evidence, are as follows. On April 14, 1984, Trooper Michael E. Coleman of the Massachusetts State police was on routine patrol in a marked cruiser on Route 1 northbound in Peabody. At about 3:50 A.M., the trooper's suspicions were aroused by a Mercedes-Benz automobile traveling north at an extremely slow rate of speed, estimated at about thirty miles per hour. The posted speed limit is fifty miles per hour. There was little or no other traffic in either direction and no adverse weather or road conditions. Speed for an automobile traveling the road in the situation described, according to the trooper, would have been at least forty-five miles per hour.

As he followed the automobile, Trooper Coleman noticed two men in the front seat (Oreto was later identified as the driver and Boozang as the passenger) making suspicious hand movements back and forth. Deciding to investigate further, the trooper pulled his cruiser into the passing lane alongside the Mercedes, slowed to the Mercedes' speed of approximately thirty miles per hour, and turned on the cruiser's alley lights.[3] The alley lights enabled the trooper to see the interior of the vehicle, a view which revealed that Oreto and Boozang were passing a "very small" brownish pipe back and forth to each other.

Trooper Coleman dropped back behind the Mercedes and turned on his blue flashing bar light to signal for a stop. The

___

[2] As a result of the seizure, complaints issued against Oreto charging him with the unlawful possession of marihuana, G. L. c. 94C, § 34, and the unlawful carrying of a handgun, G. L. c. 269, § 10 (*a*), and against Boozang charging him with unlawful possession of marihuana with intent to distribute, G. L. c. 94, § 32C(*a*), and the unlawful carrying of a handgun.

[3] The alley lights are mounted on the right side of the cruiser's blue bar light. Although the alley lights illuminated the interior of the defendants' automobile, they apparently did not pose a safety hazard, at least in the road conditions prevailing at the early hour involved here.

Mercedes continued for approximately 200 yards before stopping. During the period between slowdown and stop, Oreto and Boozang were observed "moving around inside the vehicle." As the trooper approached the driver's side of the automobile, he noticed a "roach"[4] in the ashtray and smelled a strong odor of what he believed to be marihuana. Both Oreto and Boozang were told to step outside the automobile; Oreto did first and appeared "rather nervous." The small brownish pipe was on the floor on the driver's side and, when retrieved, was seen to contain green vegetable matter which the trooper suspected was marihuana.[5] Oreto and Boozang were placed under arrest for possession of marihuana and the Mercedes was impounded.

By this time Trooper David A. Webber of the Massachusetts State police had arrived at the scene in response to a communication from Trooper Coleman. Trooper Webber handcuffed Boozang and placed him in the rear seat of his police cruiser. A towing service was called to remove the impounded Mercedes. There was evidence that, as part of State police policy, all impounded vehicles are subjected to an inventory search before they are towed to protect any valuables that might be in the vehicle. Trooper Webber conducted the inventory search and Trooper Coleman completed an inventory form required by State police procedure to report and record the search. In the course of examining the front interior of the automobile, Trooper Webber opened the unlocked glove compartment and there found and seized a 9 mm. semiautomatic handgun. Finally, after transporting Boozang to the State police barracks, Trooper Webber noticed in the police cruiser a plastic bag approximately six inches long containing brownish-colored vegetable matter. The bag was on the rear seat directly beneath where Boozang had been seated. The bag was also seized. Laboratory analysis of the material in the bag revealed it to be marihuana, which led to Boozang's being charged with possession of marihuana with intent to distribute.

___

[4] A "roach" was described as a "very small portion of a marihuana cigarette."

[5] Later laboratory testing confirmed that the roach and the vegetable matter in the pipe were marihuana.

1. It was agreed (correctly we think) that until the alley lights were engaged to disclose that Oreto and Boozang had been passing a very small pipe between them, Trooper Coleman had no basis in fact to stop the Mercedes, as no traffic or other law was being violated. The District Court judge, in his conscientiously prepared memorandum of decision, recognized the established principle that the use of artificial light to illuminate the open interior of an automobile does not constitute a search.[6] The judge thought, however, that because the cases discussing the principle involved automobiles which had been either parked or lawfully stopped, see, e.g., *Commonwealth v. Haefeli*, 361 Mass. 271, 273-275, 280 (1972); *Commonwealth v. Cavanaugh*, 366 Mass. 277, 278, 281-283 (1974); *Commonwealth v. Ling*, 370 Mass. 238 (1976), the principle was confined to the examination of the interiors of stationary automobiles. So the judge reasoned that "[i]n the case at hand, [since] the [defendants'] vehicle was not parked or lawfully stopped . . . the trooper did not have sufficient cause to pull alongside the . . . vehicle and illuminate the interior to see a small, brown pipe being passed."

The fault in the judge's analysis lies in his restriction of the principle to a situation where the vehicle whose open interior was examined by artificial light was either parked or lawfully stopped. The threshold question is not whether the vehicle was stopped or moving but whether the investigating police officer had the right to be in a position to view the interior of the automobile. If he was rightfully in such a position, then the officer could, permissibly within the requirements of the Fed-

---

[6] The principle was stated in *Texas* v. *Brown*, 460 U.S. 730, 739-740 (1983), a case involving a lawful stop of an automobile for a license check, in these terms:

"It is likewise beyond dispute that [the police officer's action] in shining his flashlight to illuminate the interior of [the defendant's] car trenched upon no right secured to the latter by the Fourth Amendment. The Court said in *United States* v. *Lee*, 274 U.S. 559, 563 (1927): '[The] use of a searchlight is comparable to the use of a marine glass or a field glass. It is not prohibited by the Constitution.' Numerous other courts have agreed that the use of artificial means to illuminate a darkened area simply does not constitute a search, and thus triggers no Fourth Amendment protection."

eral and State Constitutions, use artificial light to illuminate
its interior. The law on the subject was recently explained in
*Commonwealth* v. *Pietrass*, 392 Mass. 892, 901 n.12 (1984),
a case involving police use of a flashlight to look from a porch
through a window of a house:

> "If the police were rightfully on the porch, it does not
> matter that they saw the evidence by looking through a
> window. As long as the officer had a right to be where
> he was, he had a right to notice whatever was in plain
> view, even through a window. *Commonwealth* v. *Hason*,
> 387 Mass. 169, 176 (1982). See *Nordskog* v. *Wainwright*,
> 546 F.2d 69, 72 (5th Cir. 1977) (police could look through
> porch with sliding glass door). See also *People* v. *Willard*,
> 238 Cal. App. 2d 292, 297 (1965) ('looking through a
> window does not constitute an unreasonable search').
>
> "Nor does the fact that the officers used a flashlight
> affect the legitimacy of their view of the evidence. This
> court has said that 'the use of a flashlight to look into the
> interior of a car . . . does not amount to a search at all.'
> *Commonwealth* v. *Cavanaugh*, 366 Mass. 277, 281
> (1974). Although the search of a house is different from
> a search of a car, the reasoning of the court in *Marshall*
> v. *United States*, 422 F.2d 185, 189 (5th Cir. 1970), is
> appropriate: 'The mere use of a flashlight . . . does not
> magically transmute a non-accusatory visual encounter
> into a Fourth Amendment search. When the circumstances
> of a particular case are such that the police officer's ob-
> servation would not have constituted a search had it occur-
> red in daylight, then the fact that the officer used a
> flashlight to pierce the nighttime darkness does not trans-
> form his observation into a search.' See *United States* v.
> *Wright*, 449 F.2d 1355 (D.C. Cir. 1971) (looking through
> partially open garage with aid of flashlight does not con-
> stitute a search); *People* v. *Wheeler*, 28 Cal. App. 3d
> 1065 (1972) (same)."

There is no doubt that Trooper Coleman had the right to pull
his police cruiser alongside the defendants' vehicle as the two

automobiles traveled on Route 1, a public way. The trooper's observations through the driver's window of the small pipe being passed between Oreto and Boozang would not have constituted a search if they had occurred in daylight. Alley lights, while undoubtedly more probing than a flashlight, are no different from the latter in a case involving a lawful police investigation. It follows, in this somewhat unusual case, that the use of the alley lights at 3:50 A.M. to make the same observations that could have been made in the daylight did not intrude on the defendants' constitutional rights.

2. The balance of the case presents no difficulty. Trooper Coleman could (and did) infer, based on his experience and his observations of the extremely slow speed of the vehicle and the passing of the small pipe between the two men in the front seat, that Oreto and Boozang were probably smoking marihuana. This, in turn, justified stopping the vehicle for further investigation, as the trooper had a reasonable basis in fact to suspect that a crime was being committed. See *Commonwealth* v. *Silva*, 366 Mass. 402, 405 (1974), and cases cited. The trooper's plain view observation of the roach in the ashtray of the stopped vehicle and his smelling of the characteristic burning odor of marihuana provided a basis for seizing the roach and investigating for the presence of other controlled substances. See *Commonwealth* v. *Skea*, 18 Mass. App. Ct. 685, 688 (1984), and cases cited. The discovery of the pipe which Oreto and Boozang had been passing, with what the tropper believed was marihuana in it, together with the trooper's earlier observations, provided probable cause to arrest both men for violation of the controlled substances laws. The handgun found in the glove compartment was thereafter properly seized pursuant to a lawful inventory search. See *South Dakota* v. *Opperman*, 428 U.S. 364, 372-376 (1976); *Commonwealth* v. *Matchett*, 386 Mass. 492, 508-511 (1982). Cf. *Commonwealth* v. *Ford*, 394 Mass. 421, 424-425 (1985). The plastic bag of marihuana, apparently abandoned by Boozang on the rear seat of Trooper Webber's cruiser, was also lawfully seized. Since the police conduct at each critical stage of investigation

was lawful, the order allowing the defendants' motion to suppress evidence is erroneous and is reversed.

*So ordered.*