STATE OF CONNECTICUT *v.* STANLEY FOOTE
(AC 23712)

Flynn, Bishop and DiPentima, Js.

Argued June 8—officially released October 5, 2004

*David B. Bachman*, for the appellant (defendant).

*Christine Collyer*, special deputy assistant state's attorney, with whom, on the brief, were *Mary M. Galvin*, state's attorney, and *Francis J. McQuade*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, J. The defendant, Stanley Foote, entered a conditional plea of nolo contendere to the charge of possession of cocaine with intent to sell by a person who is not drug-dependent in violation of

General Statutes § 21a-278 (b). He appeals from the judgment of conviction on that charge pursuant to General Statutes § 54-94a, claiming that the trial court improperly denied his motion to suppress because it incorrectly (1) concluded that he was not seized illegally by the police and (2) determined that he consented to the search of the vehicle he was driving. We disagree and affirm the judgment of the trial court.

In its ruling on the defendant's motion to suppress, the court found the following facts. At around midnight on November 18, 2000, while conducting his routine patrol southbound on Route 8, Trooper Matt Comeau of the state police noticed a disabled vehicle on the northbound shoulder of the highway near exit nineteen. Comeau continued his patrol, turning around at exit eleven in Trumbull. As he returned northbound on Route 8, he observed the same disabled vehicle on the shoulder of the highway with its hazard lights on and people standing outside of it. Comeau activated his overhead lights for safety reasons and pulled onto the shoulder in order to see whether assistance was needed. As he approached, he observed the driver and two passengers get into the vehicle. The defendant then started the vehicle and attempted to drive away; however, the vehicle bucked and came to a halt.

Comeau pulled in behind the vehicle and, to provide safety and to light up the scene, he activated his police cruiser's spotlight. The defendant, who was the driver, exited the vehicle and walked toward the back of the car. Comeau told him to return to his vehicle because it was unsafe for him to be walking on the shoulder so close to the travel lane. As the defendant returned to his vehicle, he threw his keys onto the roof of the vehicle. Comeau observed the passenger seated in the front seat of the vehicle rocking forward and from side to side. Comeau radioed his troop and requested a license plate check on the vehicle. The check indicated

that the license plate matched the vehicle. The defendant again exited his vehicle and walked toward the rear of the car. Comeau yelled to the defendant to get back into his vehicle. The defendant gestured with his hands and then advanced toward Comeau. Comeau observed that the defendant, who was taller and bigger than Comeau, was sweating and appeared to be nervous or confused. The defendant returned to his vehicle.

Comeau radioed for backup and, shortly thereafter, two Seymour police officers and a state trooper arrived on the scene. Once the backup arrived, Comeau approached the defendant's vehicle, asked the defendant what was wrong with the car and requested the defendant's license and registration. The defendant said that he had left his license at home. He could not produce the registration. Comeau learned that the defendant and his passengers were coming from Bridgeport and going to Waterbury and that they had run out of gasoline. The defendant told Comeau that they had just filled up their tank with gasoline obtained from across the highway. Comeau noticed a gasoline container in the back seat of the vehicle.

Comeau asked the defendant to exit the car and walk to the rear of the vehicle. Comeau patted the defendant down but found nothing. He then asked the defendant if there was anything in the car and whether he could search it. According to Comeau and Trooper Steven Ruspis, who observed and heard the conversation between the defendant and Comeau, the defendant nonchalantly responded that Comeau could search the car. During the encounter, the troopers and police officers did not raise their voices, threaten anyone or have their service weapons drawn. Although there was a police dog present at the scene, it was not used to menace or frighten anyone.

Comeau searched the interior of the vehicle and discovered two brown packages. He noticed that the pack-

ages smelled like mustard. The contents of the packages tested positive for the presence of cocaine.

On November 13, 2002, the defendant entered a conditional plea of nolo contendere as to the count charging him with possession of cocaine with intent to sell by a person who is not drug-dependant, reserving his right to appeal to challenge the denial of his motion to suppress. The state nolled the remaining charges against him. The court sentenced the defendant to eight years incarceration and five years special parole. This appeal followed.

Our standard of review in connection with the court's denial of a motion to suppress is well settled. "Upon review of a trial court's denial of a motion to suppress, [t]he court's conclusions will not be disturbed unless they are legally and logically inconsistent with the facts. . . . [W]e will reverse the trial court's ruling [on evidence] only where there is abuse of discretion or where an injustice has occurred . . . and we will indulge in every reasonable presumption in favor of the trial court's ruling." (Citation omitted; internal quotation marks omitted.) *State* v. *Salmon,* 66 Conn. App. 131, 135, 783 A.2d 1193 (2001), cert. denied, 259 Conn. 908, 789 A.2d 997 (2002).

## I

The defendant first claims that he was unlawfully seized by the police. Specifically, he argues that when he was seized, the police did not have a reasonable and articulable suspicion of criminal activity. We are not persuaded.

## A

We must first determine the point at which the encounter between the police and the defendant constituted a seizure. The court, the state and the defendant all disagree as to the timing of the seizure. The defendant

asserts that the seizure occurred at the moment that Comeau turned on his spotlight after pulling his cruiser behind the defendant's vehicle. The state asserts that the seizure occurred at the time of the patdown of the defendant. The court concluded that the seizure occurred when the additional officers arrived on the scene. We agree with the court.

The Connecticut constitution offers more protection from unreasonable search and seizure than does its federal counterpart. See *State* v. *Wilkins*, 240 Conn. 489, 505, 692 A.2d 1233 (1997). Our review of a court's determination of when a seizure occurred is well settled. "Under our state constitution, a person is seized only if in view of all the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave." (Internal quotation marks omitted.) *State* v. *James*, 237 Conn. 390, 404, 678 A.2d 1338 (1996).

The court held that Comeau initially engaged the defendant in his community caretaking capacity. We agree. In *Cady* v. *Dombrowski*, 413 U.S. 433, 441, 93 S. Ct. 2523, 37 L. Ed. 2d 706 (1973), the United States Supreme Court stated that "[l]ocal police officers, unlike federal officers, frequently . . . engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." See also *State* v. *Bernier*, 46 Conn. App. 350, 368, 700 A.2d 680 (1997), rev'd on other grounds, 246 Conn. 63, 717 A.2d 652 (1998). Assisting motorists is one such function that police officers commonly perform. Because Comeau's initial encounter with the defendant was to assist him, we reject the defendant's argument that Comeau's conduct constituted an illegal seizure. The court properly concluded that from the time Comeau first approached the vehicle until the backup officers arrived, Comeau

was not engaged in an investigatory stop of criminal activity, but rather was acting in accordance with his community caretaking function.

The court further concluded that the encounter became a seizure when the backup officers arrived at the scene. We agree. "What starts out as a consensual encounter becomes a seizure if, on the basis of a show of authority by the police, a reasonable person in the defendant's position would have believed that he was not free to leave." *State* v. *Story*, 53 Conn. App. 733, 739, 732 A.2d 785, cert. denied, 251 Conn. 901, 738 A.2d 1093 (1999). Under the particular facts and circumstances of this case, a reasonable person in the defendant's position would not have felt free to leave when the additional cruisers arrived, and therefore, at that point, the seizure occurred.

## B

We next must determine whether the court properly concluded that Comeau had a reasonable and articulable suspicion that the defendant was engaged in criminal activity. We conclude that it did.

Under the United States and Connecticut constitutions, in appropriate circumstances and in an appropriate manner, a police officer may detain an individual "based on a reasonable and articulable suspicion that the individual is engaged in criminal activity, even if there is no probable cause to make an arrest." (Internal quotation marks omitted.) *State* v. *Santos*, 267 Conn. 495, 505, 838 A.2d 981 (2004). The court must determine whether, under the totality of the circumstances, "the detaining officers had a particularized objective basis for suspecting the particular person stopped of criminal activity." (Internal quotation marks omitted.) Id. Our determination of whether a reasonable and articulable suspicion exists rests on a two part analysis: "(1) whether the underlying factual findings of the trial court

are clearly erroneous; and (2) whether the conclusion that those facts gave rise to such a suspicion is legally correct." (Internal quotation marks omitted.) *State* v. *Wilkins*, supra, 240 Conn. 496.

The defendant does not attack the underlying facts, instead he attacks the court's conclusion that Comeau had a reasonable and articulable suspicion of criminal activity. Because the defendant attacks the court's ultimate conclusion regarding the existence of a reasonable and articulable suspicion, our review is plenary. See *State* v. *Torres*, 230 Conn. 372, 379, 645 A.2d 529 (1994). A reasonable and articulable suspicion is "an objective standard that focuses . . . on whether a reasonable person having the information available to and known by the police, would have had that level of suspicion." (Internal quotation marks omitted.) *State* v. *Gregory*, 74 Conn. App. 248, 257, 812 A.2d 102 (2002), cert. denied, 262 Conn. 948, 817 A.2d 108 (2003).

In the present case, when Comeau initially drove up to the scene, he witnessed the defendant and his two passengers jump into the vehicle and attempt to drive away. Later, Comeau observed the defendant's erratic behavior of throwing his keys on the roof of the vehicle. The defendant also failed to obey Comeau's instruction to stay in the vehicle. Comeau noted that the defendant appeared nervous and that he was sweating, even though it was after midnight in the middle of November. Furthermore, one of the passengers in the vehicle was rocking back and forth, and the defendant was unable to produce his license or registration. On the basis of these facts and the reasonable inferences to be drawn therefrom, we conclude that the court properly determined that Comeau had a reasonable and articulable suspicion of criminal activity, that is, the presence of contraband in the vehicle, and that, accordingly, the seizure was lawful.

## II

The defendant also claims that he did not consent to the search of his vehicle. He does not argue that his will was overborne by the officers; instead, he argues that he never actually consented to the search. In support of that argument, the defendant posits that the evidence the court relied on was not credible. We disagree with the defendant.

"A search . . . is not unreasonable under . . . the fourth amendment to the constitution of the United States . . . if a person with authority to do so has freely consented . . . . Whether there was valid consent to a search is a factual question that will not be lightly overturned on appeal. . . . The state has the burden to establish the voluntariness of the consent, and the trial court's finding in that regard will not be upset . . . unless clearly erroneous." (Citations omitted; internal quotation marks omitted.) *State* v. *Cobb*, 251 Conn. 285, 314–15, 743 A.2d 1 (1999), cert. denied, 531 U.S. 841, 121 S. Ct. 106, 148 L. Ed. 2d 64 (2000).

Comeau and Ruspis testified that the defendant nonchalantly consented to Comeau's request to search the car. The defendant testified that he did not give his consent. The defendant's testimony was not corroborated. The court found the officers' testimony more credible than that of the defendant and concluded that the defendant voluntarily consented to the search. "The weight to be given the evidence and the credibility of witnesses are solely within the determination of the trier of fact." *State* v. *Rollins*, 51 Conn. App. 478, 485, 723 A.2d 817 (1999). The court's analysis in this case was inherently fact specific, and its findings are supported by the record. As a consequence, the defendant's claim fails.

The judgment is affirmed.

In this opinion the other judges concurred.