COMMONWEALTH vs. EVAN L. BRIAND
(and a companion case[1]).

No. 07-P-606.

Hampshire. December 6, 2007. - February 1, 2008.

Present: KANTROWITZ, DREBEN, & McHUGH, JJ.

Further appellate review granted, 451 Mass. 1101 (2008).

*Search and Seizure,* Automobile. *Constitutional Law,* Search and seizure.

A District Court judge erred in allowing the criminal defendants' motions to suppress evidence of marijuana and other contraband that a police officer seized from their truck, where the officer's mere activation of the white "take down lights" on his cruiser to illuminate the area before approaching the defendants' vehicle did not effect a seizure. [161-163]

COMPLAINTS received and sworn to in the Eastern Hampshire Division of the District Court Department on July 5, 2006.

Pretrial motions to suppress evidence were heard by *W. Michael Goggins,* J., and a motion for reconsideration was also heard by him.

An application for leave to prosecute an interlocutory appeal was allowed by *John M. Greaney,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court.

*Judith Ellen Pietras,* Assistant District Attorney, for the Commonwealth.

*Sarah E. Dolven (William A. Volk* with her) for Carrie A. Clark & another.

DREBEN, J. This is an interlocutory appeal by the Commonwealth authorized by a single justice of the Supreme Judicial Court pursuant to Mass.R.Crim.P. 15(a)(2), as appearing in 422 Mass. 1501 (1996), following the allowance of the defendants' motions to suppress evidence obtained by the Massachusetts Environmental Police. We reverse.

[1]Commonwealth vs. Carrie A. Clark.

The only witness at the hearing on the motion to suppress was Sergeant Charles Ziemba. As found by the judge, and as supplemented by uncontested details, the circumstances were as follows. On July 2, 2006, at about 11:30 P.M., on entering the Swift River boat ramp and parking area, Sergeant Ziemba saw a single vehicle, a green pickup truck, without lights, parked in a cul de sac. He pulled up within fifteen feet of the truck and saw that there was a male in the driver's seat and a female in the front passenger seat. He observed miscellaneous items on the ground in the general proximity of the truck, specifically a beer can, some sunglasses, and some papers. Ziemba activated his white "take down lights,"[2] got out of his cruiser, and approached the truck. As he did so, he noticed a furtive gesture by the driver and something being thrown out of the driver's window. As he neared the defendants, Ziemba smelled marijuana emanating from the truck. He ordered the defendants to place their hands on the dashboard, radioed for back up, and subsequently asked the defendants to leave the truck. On the floor of the truck, he saw a bag of marijuana and a pistol. Additional contraband items were found on the defendants after a search.

Ziemba testified that the cruiser did not block the truck in any way and that the driver could pull around the cruiser very easily.[3]

In his memorandum and order, the judge distinguished *Commonwealth* v. *Leonard*, 422 Mass. 504, cert. denied, 519 U.S. 877 (1996), and noted that the case was closer to *Commonwealth* v. *Smigliano*, 427 Mass. 490 (1998), as there were here no facts to indicate that the defendants needed assistance. He found that "the totality of the circumstances clearly suggest the defendant[s were] not free to ignore the . . . inquiry," and ruled that

"a seizure occurred when Ziemba pulled up closely to the

---

[2]In a case certifying a question (not relevant to this appeal) from the United States Court of Appeals for the First Circuit, *Horta* v. *Sullivan*, 4 F.3d 2, 6 n.4 (1st Cir. 1993), the Supreme Judicial Court, in quoting from the First Circuit decision, included a description of "take down lights" as "small white lights affixed to the roof of the police cruiser and located in between two sets of flashing blue lights." *Horta* v. *Sullivan*, 418 Mass. 615, 618 n.6 (1994).

[3]The defendants' affidavits stated that the cruiser blocked their truck. The affidavits, however, were not introduced into evidence and the motion judge, in discussion with counsel, indicated that they had no evidentiary value. Counsel for Briand indicated that he understood.

> defendant[s] and activated his cruiser's take down lights onto the defendant[s] . . . . The fact that the lights in *Smigliano* were blue and here they were white is a classic case of a distinction without a difference."

Since the Commonwealth had produced no facts that rose to the level of reasonable suspicion prior to the activation of the lights, the judge allowed the motions to suppress.

A review of the cases in Massachusetts and elsewhere indicates that there is, however, a difference between lights used for illumination and blue lights, flashers, or sirens.[4] See *Commonwealth* v. *Grandison*, 433 Mass. 135, 136, 138 (2001) (use of cruiser's high beams and bright "alley lights" did not constitute seizure after police followed defendant for purpose of surveillance). As stated in *Commonwealth* v. *Oreto*, 20 Mass. App. Ct. 581, 584 (1985), it is an "established principle that the use of artificial light to illuminate the open interior of an automobile does not constitute a search." While noting that alley lights are "more probing than a flashlight," we concluded in *Commonwealth* v. *Oreto*, *supra* at 586, that they "are no different from the latter in a case involving a lawful police investigation" and held that "the use of the alley lights at 3:50 A.M. to make the same observations that could have been made in the daylight did not intrude on the defendants' constitutional rights." The same reasoning is applicable here. See *State* v. *Justesen*, 47 P.3d 936, 939 (Utah Ct. App. 2002) (take-down lights used "not as a show of authority, but to illuminate the area").

In this case, Ziemba did not block the defendant's truck, use blue lights, flashers, or sirens, display a weapon, or use threatening words or tone or other commanding authority such that "a reasonable person would have believed that he was not free to leave."[5] *Commonwealth* v. *Cook*, 419 Mass. 192, 199 (1994). See *Commonwealth* v. *Hart*, 45 Mass. App. Ct. 81, 84 (1998), quoting from *Commonwealth* v. *Pimentel*, 27 Mass. App. Ct.

---

[4]In *Commonwealth* v. *Evans*, 436 Mass. 369, 372-373 (2002), the Supreme Judicial Court held that the use of blue lights did not effect a seizure where the police were engaged in a community caretaking function.

[5]There was no seizure before Ziemba ordered the defendants to place their hands on the dashboard. At that time, because of the smell of marijuana, he had probable cause to arrest them.

557, 560 (1989) (fact that "average citizen questioned by the police does not necessarily feel free to walk away without responding" does not automatically result in conclusion that he has been seized). Ziemba's use of take down lights to illuminate the area before approaching the vehicle did not constitute a seizure. To hold otherwise would discourage officers from using such lights when necessary for their safety or the safety of others. See *Commonwealth* v. *Cavanaugh*, 366 Mass. 277, 282 (1974) (flashlight).[6]

Cases elsewhere indicate that the use of artificial light, without more, does not effect a seizure. For a collection of cases, involving mostly spotlights, permitting such use and finding no seizure, see *Campbell* v. *State*, 841 N.E.2d 624, 628 (Ind. Ct. App. 2006). See generally 1 LaFave, Search and Seizure § 2.2(b), at 461 (4th ed. 2004).

The order allowing the motion to suppress is reversed and the matter is remanded to the District Court for further proceedings.

*So ordered.*

---

[6] In *Commonwealth* v. *Cavanaugh*, 366 Mass. at 281, the court quoted from *Dorsey* v. *United States*, 372 F.2d 928, 931 (D.C. Cir. 1967), "If policemen are to serve any purpose of detecting and preventing crime by being out on the streets at all, they must be able to take a closer look at challenging situations as they encounter them."