# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A15-0359

Rita Dolores Illi, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent

**Filed December 21, 2015**
**Affirmed**
**Ross, Judge**

Washington County District Court
File No. 82-CV-13-6090

Charles A. Ramsay, Daniel J. Koewler, Ramsay Law Firm, PLLC, Roseville, Minnesota (for appellant)

Lori Swanson, Attorney General, Elizabeth Oji, Assistant Attorney General, Peter D. Magnuson, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Chutich, Presiding Judge; Ross, Judge; and Larkin, Judge.

## S Y L L A B U S

Police do not seize the occupant of an already-stopped car by shining a squad car's spotlight on it before approaching on foot.

## O P I N I O N

**ROSS**, Judge

We must decide whether an officer's use of his squad car's spotlight constituted a seizure. An officer approached a car that was stopped in a strip mall parking lot after

midnight. The officer arrested the driver for drunk driving, the driver refused a breath test, and the commissioner of public safety revoked her license. The driver appeals the district court's order affirming the commissioner's revocation decision. We affirm because we reject the driver's argument that the officer seized her without reasonable suspicion when he illuminated her car with his spotlight before approaching it.

## FACTS

Around 1:30 on a November 2013 morning, Woodbury police officer Paul Kroshus was filling his tires at a gas station when a red Jeep traveled through the parking lot and into the lot of a nearby strip mall. Officer Kroshus found this unusual because, at that hour, all the mall's businesses were closed. The officer investigated and saw that the Jeep had stopped along a curb in the lot behind a delivery truck. The officer pulled behind the Jeep and to its left, stopping several feet away. Officer Kroshus illuminated the area with his spotlight, and then he approached on foot. He did not activate his emergency lights or use the squad car's loudspeaker.

As Officer Kroshus walked to the Jeep, the only occupant, Rita Delores Illi, lowered the driver's window. Officer Kroshus noticed the smell of an alcoholic beverage and saw that Illi's eyes were bloodshot and watery. He administered field sobriety tests and arrested Illi for drunk driving. He took her to the police station where she refused to give an adequate breath sample to determine her intoxication level. The commissioner therefore revoked Illi's driving privileges under the implied-consent statute.

Illi petitioned the district court to review the revocation. She argued that evidence of her test refusal is inadmissible because the officer seized her illegally, and she

challenged the constitutionality of the implied-consent statute. The district court found that the officer had not stopped behind the Jeep in such a way that blocked Illi from leaving. It sustained the revocation, holding that no seizure had occurred and upholding as constitutional the implied-consent law. Illi appeals.

## ISSUE

Did the police officer seize Illi by stopping near her already-stopped vehicle, shining the squad car's spotlight on the vehicle, and approaching on foot?

## ANALYSIS

Illi challenges the district court's determination that the officer did not unconstitutionally seize her. We will review this determination de novo. *Wilkes v. Comm'r of Pub. Safety*, 777 N.W.2d 239, 242–43 (Minn. App. 2010). But we will review the underlying fact findings only for clear error, deferring to the reasonable inferences that the district court drew from the evidence. *State v. Britton*, 604 N.W.2d 84, 87 (Minn. 2000).

Illi argues that she had already been seized by the time Officer Kroshus observed signs of her intoxication because the officer had activated the squad car's spotlight and parked behind her, blocking her in. She maintains that the officer lacked reasonable suspicion necessary for this seizure, implicating state constitutional rights and requiring the district court to suppress the evidence of the officer's subsequent observations.

But Illi wrongly asserts that she had been seized. It is true that an officer must have reasonable suspicion to seize a person. *See State v. Cripps*, 533 N.W.2d 388, 392 (Minn. 1995). An officer's actions constitute a seizure when they indicate to a reasonable person that she is not free to leave. *In re E.D.J.*, 502 N.W.2d 779, 783 (Minn. 1993). Generally,

3

no seizure occurs when an officer merely walks up to and speaks with a driver sitting in an already-stopped vehicle. *State v. Vohnoutka*, 292 N.W.2d 756, 757 (Minn. 1980). Nor does a seizure occur simply because a person feels some "moral or instinctive pressure to cooperate" with the officer. *State v. Harris*, 590 N.W.2d 90, 99 (Minn. 1999) (quotation omitted). Because Illi had already stopped her Jeep without any police involvement before the officer walked up to her, and because the officer's approach was not itself a seizure, we must consider whether the officer's pre-approach conduct constituted a seizure.

Illi argues that she was seized because the officer was "boxing her in" with his squad car. The argument fails on the facts. It is true that an officer's blocking of a vehicle may constitute a seizure because that sort of conduct might indicate to a reasonable person that she is not free to leave. *State v. Sanger*, 420 N.W.2d 241, 243 (Minn. App. 1988). But blocking in a car so as to execute a seizure occurs only when the officer actually positions his squad car so as to prevent the other vehicle from leaving. *See id.* And the district court found that Officer Kroshus was not stopped so as to prevent Illi from pulling away from behind the truck. We rely on that finding because it is supported by the evidence. Both a video recording and the officer's testimony confirm it. Because the officer did not block in Illi's vehicle, the squad car's positioning did not constitute a seizure.

Illi also argues that Officer Kroshus's use of his squad car's spotlight to illuminate the area before approaching her Jeep constituted a seizure. The argument is not convincing. We have implicitly held that the use of a police spotlight to locate a vehicle was not a seizure. *See Crawford v. Comm'r of Pub. Safety*, 441 N.W.2d 837, 838–39 (Minn. App. 1989). Illi attempts to escape that holding, however, pointing out that, unlike the *Crawford*

4

case, here the officer's spotlight remained activated while he approached. This does differentiate this case from *Crawford*, but we think the distinction is immaterial. This case shares *Crawford*'s material circumstances: the officer had nothing to do with stopping the car; the officer did not position the squad car in a manner that would prevent the stopped car from departing; the officer illuminated the car with his spotlight; and the officer then approached the car and its occupant on foot. In both cases, the occupant was certainly aware that the officer had fixed his attention on the stopped car and was approaching with interest. We have no cause to suppose that a reasonable person would feel significantly more or less free to drive away depending simply on whether or not the officer had turned the spotlight off before approaching. These salient circumstances did not constitute a seizure in *Crawford*, and so they also do not constitute a seizure here.

Illi would have us treat the spotlight like the squad car's emergency lights. We decline. Unlike a squad car's red or blue emergency lights—the use of which frequently (but not always) communicates a seizure, *compare State v. Bergerson*, 659 N.W.2d 791, 795 (Minn. App. 2003) ("A driver confronted with a trailing squad car with flashing red lights inevitably feels duty bound to submit to this show of authority by pulling over."), *with State v. Hanson*, 504 N.W.2d 219, 220 (Minn. 1993) (deeming erroneous a holding "that *whenever* an officer turns on the squad car's flashing red lights before getting out and approaching an already stopped car, the officer turns the encounter into a seizure")—white spotlights are not commonly known to inform a person to yield to police. We suppose that people instead understand that police use flashlights and spotlights primarily either to locate things or to illuminate areas to perform their duties at night. *Cf. Vohnoutka*, 292

N.W.2d at 757 (holding that when police "did not stop or otherwise temporarily seize defendant's car," an officer's use of his flashlight to look into the car was not a search implicating the occupant's constitutional rights). Officer Kroshus explained that he uses his spotlight in many ways, such as to identify addresses or search open areas. And no evidence suggests that, without being accompanied by some verbal command, police use of a flashlight or spotlight is reasonably or commonly interpreted as a command to stop. It is also undisputed that an officer's approach under identical circumstances during daylight hours (without the need for or use of artificial lighting) would certainly not constitute a seizure. Holding that an artificially lighted nighttime approach is a seizure would therefore do little more than to pressure nighttime officers to perform the same dangerous duties unsafely, in the dark.

We add that our holding is consistent with multiple other jurisdictions that have considered the issue. Like Minnesota, these jurisdictions have chosen to apply their state constitutions in a manner that differs from the United States Supreme Court's approach to defining a seizure in *California v. Hodari D.*, 499 U.S. 621, 111 S. Ct. 1547 (1991), choosing instead to consider whether a reasonable person in the defendant's position would have felt free to leave. *See E.D.J.*, 502 N.W.2d at 783 (holding that the pre-*Hodari D.* reasonable person test applies when determining whether a seizure has occurred under the Minnesota constitution); *State v. Clayton*, 45 P.3d 30, 34 (Mont. 2002) (holding the same under the Montana constitution); *State v. Oquendo*, 613 A.2d 1300, 1310 (Conn. 1992) (holding the same under the Connecticut constitution); *Commonwealth v. Stoute*, 665 N.E.2d 93, 97 (Mass. 1996) (holding the same under the Massachusetts constitution).

6

Montana's high court found that an officer's stopping behind a car and shining his spotlight into the car "do not amount to such a show of authority that a reasonable person would have believed he or she was not free to leave." *Clayton*, 45 P.3d at 35. Connecticut's intermediate appellate court has also held that no seizure occurred when an officer turned on his spotlight after pulling behind a vehicle. *State v. Foote*, 857 A.2d 406, 409–10 (Conn. App. Ct. 2004). Likewise the appeals court in Massachusetts has held that an officer's use of the squad car's "take down lights"—white lights mounted between the blue lights on a police car—did not constitute a seizure. *Commonwealth v. Briand*, 879 N.E.2d 1270, 1270–72 (Mass. App. Ct. 2008) (observing that finding a seizure "would discourage officers from using such lights when necessary for their safety or the safety of others"). We see no flaw in the reasoning of these cases, each of which addressed a similar circumstance.

Because we hold that Officer Kroshus did not seize Illi's Jeep either by his positioning of his squad car or his use of its spotlight, we do not consider the parties' dispute over whether the officer had sufficient suspicion to perform the alleged seizure. And although Illi raised a constitutional challenge to Minnesota's implied-consent law in the district court and in her brief on appeal, she expressly abandoned the challenge through her counsel during oral argument on appeal, and we do not address it.

**D E C I S I O N**

We affirm the district court's supported finding of fact that Officer Kroshus did not position his squad car in such a way as to prevent Illi from backing out and driving away from where she had stopped behind the delivery truck. We also affirm the district court's

7

holding that the officer did not seize Illi's already-stopped car by shining his squad car's spotlight on it before approaching on foot.

**Affirmed.**