*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1987**

State of Minnesota,
Respondent,

vs.

Brian Albert Lacey,
Appellant.

**Filed July 25, 2016
Affirmed
Larkin, Judge**

Beltrami County District Court
File No. 04-CR-15-2159

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Annie P. Claesson-Huseby, Beltrami County Attorney, Kristal Kadrie, Assistant County Attorney, Bemidji, Minnesota (for respondent)

Brian Albert Lacey, Laporte, Minnesota (pro se appellant)

Considered and decided by Connolly, Presiding Judge; Larkin, Judge; and Klaphake, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**LARKIN**, Judge

Appellant challenges the district court's denial of his motion to suppress evidence, arguing that a police officer unlawfully seized him. We affirm.

## FACTS

Respondent State of Minnesota charged appellant Brian Albert Lacey with fourth-degree driving while impaired (DWI). Lacey moved to suppress all evidence obtained when a police officer approached him after he drove his truck into a parking lot where the officer was conducting a traffic stop of another vehicle. He argued, in part, that the approach constituted an illegal seizure. The district court held a hearing on Lacey's motion, heard testimony from Lacey and Officer Jessica Gage of the Bemidji Police Department, and found the relevant facts to be as follows.

At approximately 12:24 a.m. on July 19, 2015, Officer Gage was assisting other officers with a traffic stop near the east exit of a parking lot in Bemidji, when she heard what sounded like a diesel truck. Officer Gage turned and saw a truck approximately 25 yards away in the parking lot. The truck's headlights were off. Officer Gage approached the truck to explain to its driver, Lacey, that he could not use the east exit of the parking lot because of the traffic stop and to advise him that the truck's headlights were off. Officer Gage testified that Lacey's truck was "already coming to a stop" when she approached it. Officer Gage used her flashlight to signal to Lacey to roll down his driver's side window.

Lacey rolled down his window and Officer Gage told him that the east exit was unavailable due to the traffic stop and that his headlights were off. Lacey told Officer Gage

that he was aware that his headlights were off. While speaking with Lacey, Officer Gage smelled an odor of alcohol, observed that Lacey had bloodshot, watery eyes, and noted that his speech was slurred. Officer Gage ordered Lacey out of the truck and asked him to perform field sobriety tests. Officer Gage also asked Lacey to perform a preliminary breath test, which registered an alcohol concentration of 0.182. Officer Gage arrested Lacey for DWI.

The district court denied Lacey's motion, reasoning that "[Lacey] was not seized when Officer Gage first approached his truck." Lacey stipulated to the prosecution's case under Minn. R. Crim. P. 26.01, subd. 4, to obtain review of the district court's denial of his motion to suppress, and the district court found him guilty of DWI. This appeal follows.

## D E C I S I O N

The Fourth Amendment of the U.S. Constitution and article I, section 10 of the Minnesota Constitution protect "[t]he right of the people to be secure in their persons, houses, papers, and effects" against "unreasonable searches and seizures." However, a police officer may initiate a limited, investigative stop without a warrant if the officer has reasonable, articulable suspicion of criminal activity. *State v. Munson*, 594 N.W.2d 128, 136 (Minn. 1999). Under the Minnesota Constitution, a seizure occurs when, given the totality of the circumstances, "a reasonable person in the defendant's shoes would have concluded that he or she was not free to leave." *In re Welfare of E.D.J.*, 502 N.W.2d 779, 783 (Minn. 1993); *see also State v. Askerooth*, 681 N.W.2d 353, 362 (Minn. 2004) (explaining that article I, section 10 of the Minnesota Constitution provides greater

3

protection than the Fourth Amendment, under which a seizure only occurs when the police use physical force or a person submits to a show of authority by the police).

"Not every interaction between the police and a citizen amounts to a seizure." *State v. Klamar*, 823 N.W.2d 687, 692 (Minn. App. 2012). "A person generally is not seized merely because a police officer approaches him in a public place or in a parked car and begins to ask questions." *State v. Harris*, 590 N.W.2d 90, 98 (Minn. 1999). "Generally, no seizure occurs when an officer merely walks up to and speaks with a driver sitting in an already-stopped vehicle." *Illi v. Comm'r of Pub. Safety*, 873 N.W.2d 149, 152 (Minn. App. 2015). Likewise, a seizure does not occur when "a person, due to some moral or instinctive pressure to cooperate, complies with a request . . . because the other person to the encounter is a police officer." *Harris*, 590 N.W.2d at 99 (quotation omitted). We review a district court's determination whether an unconstitutional seizure has occurred de novo. *Illi*, 873 N.W.2d at 151.

Lacey argues that Officer Gage seized him by "blocking a parking lot exit, approaching in uniform, and ordering [him] to roll down his window by knocking on the glass with a flashlight" and that the officer lacked a lawful basis to do so. The state counters that Lacey "was not seized when [Officer Gage] approached his vehicle," and was instead "seized once Officer Gage smelled an odor of alcohol on [Lacey] and observed him to have bloodshot watery eyes." Lacey does not dispute that Officer Gage had a lawful basis to seize him once he rolled down the window of his truck and Officer Gage observed indicia of alcohol use. Thus, the issues on appeal are whether Officer Gage seized Lacey prior to observing the indicia of alcohol use and, if so, whether that seizure was lawful.

4

Lacey relies on *State v. Cripps*, 533 N.W.2d 388 (Minn. 1995), and *State v. Sanger*, 420 N.W.2d 241 (Minn. App. 1988). In *Cripps*, the Minnesota Supreme Court held that a bar patron was seized when a uniformed and armed officer approached her and asked her for identification to prove that she was of legal age to consume alcohol. 533 N.W.2d at 391. In concluding that a reasonable person would not feel free to disregard the officer's request or terminate the encounter, the supreme court emphasized that the officer asked the bar patron to prove her innocence of the crime of underage consumption of alcohol. *Id.* In *Sanger*, this court held that a driver who was sitting in a parked vehicle was seized when an officer "parked his squad car in such a position that [the driver] could not exit," activated his flashing red lights, and honked his horn. 420 N.W.2d at 242-44.

The circumstances of this case are unlike those in *Cripps* and *Sanger*. First, Officer Gage did not ask Lacey any questions—much less ask him to prove that he was innocent of a crime—prior to the point at which Lacey contends the seizure occurred. Second, the record does not indicate that the police prevented Lacey from leaving the parking lot. Although the traffic stop of the other vehicle apparently prevented Lacey from using the east exit, that exit was not the only exit. In fact, Lacey testified that when he realized the police were conducting a traffic stop in the parking lot, he "was going to back up and go out the other exit, the way [he] came." Moreover, the position of the officers' cars at the east exit was not related to Lacey's course of travel or an attempt to prevent him from exiting the lot.

Lacey argues that a "reasonable person, observing a uniformed officer approaching and tapping on the driver's side window with a flashlight, would not feel allowed to leave

the scene." It is not clear how Officer Gage used her flashlight to signal to Lacey to roll down his window. Lacey testified that Officer Gage "tapped on the window with her mag light [flashlight]." Officer Gage testified that she "might have waived [her] flashlight." But a seizure does not occur "when an officer merely walks up to and speaks with a driver sitting in an already-stopped vehicle." *Illi*, 873 N.W.2d at 152. The additional act of tapping on the window would not have converted the interaction between Lacey and Officer Gage into a seizure requiring reasonable, articulable suspicion of criminal activity. Regardless of any moral or instinctive pressure that Lacey may have felt to roll down his window and talk to Officer Gage, Officer Gage's actions did not result in a seizure. *See Harris*, 590 N.W.2d at 99 (noting that seizure does not occur when "a person, due to some moral or instinctive pressure to cooperate, complies with a request . . . because the other person to the encounter is a police officer" (quotation omitted)).

In sum, the district court correctly ruled that Lacey was not seized when Officer Gage approached his vehicle and directed him to roll down his window. We therefore do not address Lacey's arguments that the officer lacked a legal basis to do so.

**Affirmed.**