*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0714**

State of Minnesota,
Respondent,

vs.

Richard Chavez-Aguilar,
Appellant.

**Filed May 6, 2024**
**Affirmed**
**Bjorkman, Judge**

Hennepin County District Court
File No. 27-CR-21-23229

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, Adam E. Petras, Assistant County Attorney, Emily Toms, Certified Student Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, St. Paul, Minnesota; and

David M. Robbins, Special Assistant Public Defender, Meyer Njus Tanick, PA, Minneapolis, Minnesota (for appellant)

Considered and decided by Larkin, Presiding Judge; Segal, Chief Judge; and Bjorkman, Judge.

**NONPRECEDENTIAL OPINION**

**BJORKMAN**, Judge

Appellant challenges his unlawful-possession-of-a-firearm conviction, arguing that the district court erred by denying his motion to suppress evidence obtained during a search

of his vehicle because police (1) unlawfully seized him by approaching his already-stopped vehicle and directing him to roll down his window and (2) unlawfully searched his vehicle without probable cause. We affirm.

**FACTS**

Shortly before 1:00 a.m. on December 16, 2021, Bloomington Police Officer William Markham (the officer) and his partner responded to a 911 call reporting "suspicious activity," specifically a vehicle parked on the street for five to ten minutes with its fog lights on. Both officers were uniformed and in a marked squad car. Upon arriving at the location, the officer saw a vehicle legally parked on the street with its fog lights on and a single occupant. He parked the squad car behind the vehicle and turned on its spotlight but not the emergency lights or sirens. Leaving his partner in the squad car to check the vehicle's information, the officer walked toward the driver's door with his flashlight illuminated.

As he approached the vehicle, the officer directed the driver, later identified as appellant Richard Chavez-Aguilar, to roll down his window. After he did so, the officer saw Chavez-Aguilar holding a green smoking device and smelled the odor of burnt marijuana coming from the vehicle. The officer asked Chavez-Aguilar if he had "marijuana" in the vehicle, and he said that he did. The officer then directed Chavez-Aguilar to step out of the vehicle, frisked him, and had him wait by the squad car while the officer searched the vehicle.

Inside the vehicle, the officer found the green smoking device, which contained burnt marijuana residue. He also found a "vape" cartridge, three packages of marijuana

2

that appeared to be "bought in a store" but not legally available for sale in Minnesota, 11 bills marked as not legal tender, and a live nine-millimeter bullet. Upon finding the bullet, the officer asked Chavez-Aguilar if he had a firearm in the vehicle; he said he did not. But further searching revealed a nine-millimeter firearm, two loaded magazines, and another loose nine-millimeter bullet, along with three packages of methamphetamine and packaging materials. Chavez-Aguilar acknowledged that he did not have a permit for the firearm.

Chavez-Aguilar was charged with unlawful possession of a firearm and fifth-degree possession of a controlled substance. He moved to suppress the evidence obtained from his vehicle, arguing that the officer (1) seized him by parking behind him, shining a spotlight on his vehicle, and directing him to roll down his window; and (2) lacked reasonable suspicion of criminal activity to do so. Alternatively, he argued that the officer's observations after he rolled down the window were insufficient to establish probable cause to search his vehicle.

At the suppression hearing, the officer testified about his encounter with Chavez-Aguilar and search of the vehicle. He testified that, as part of their initial contact, Chavez-Aguilar "ha[d] to roll down his window."[1] Defense counsel asked the officer whether Chavez-Aguilar rolled the window down "on his own" or if the officer "motion[ed]" for him to do so, "asked" him to do so, or "tapped [his] flashlight on the window." The officer

[1] The officer acknowledged that there was no video evidence of his interaction with Chavez-Aguilar because, contrary to department policy, he failed to activate his body-worn camera.

responded that he did not recall. He acknowledged that Chavez-Aguilar was cooperative and did not appear nervous or impaired.

The district court denied the motion, reasoning that (1) the officer did not seize Chavez-Aguilar until he ordered him out of the vehicle; and (2) at that point, the officer had probable cause to support a warrantless search of the vehicle because he saw the smoking device in Chavez-Aguilar's hand, he smelled burnt marijuana, and Chavez-Aguilar confirmed that there was marijuana in the vehicle.

Thereafter, Chavez-Aguilar waived a jury trial, the state agreed to dismiss the controlled-substance charge, and the parties submitted the firearm charge to the district court on stipulated evidence under Minn. R. Crim. P. 26.01, subd. 4. The district court found Chavez-Aguilar guilty and sentenced him to 60 months' imprisonment.

Chavez-Aguilar appeals.

## DECISION

When reviewing a pretrial order on a motion to suppress evidence, we independently review the facts to determine whether, as a matter of law, the district court erred in suppressing or not suppressing the evidence. *State v. Wilde*, 947 N.W.2d 473, 476 (Minn. App. 2020), *rev. denied* (Minn. Oct. 1, 2020). We review the district court's factual findings for clear error and its legal determinations de novo. *Id.*

The United States and Minnesota Constitutions protect against "unreasonable searches and seizures." U.S. Const. amend. IV; Minn. Const. art. I, § 10. A warrantless search or seizure is presumptively unreasonable. *State v. Lugo*, 887 N.W.2d 476, 486 (Minn. 2016). One exception to the warrant requirement permits police to conduct a brief

4

investigatory stop if they have reasonable, articulable suspicion of criminal activity. *Id.* Another, termed the "automobile exception," permits police to conduct a warrantless search of a vehicle based on probable cause that it contains contraband or evidence of a crime. *State v. Torgerson*, 995 N.W.2d 164, 168-69 (Minn. 2023).

Chavez-Aguilar argues that the officer seized him before he rolled his window down, when the officer undisputedly lacked reasonable suspicion of criminal activity. In the alternative, he asserts that even if he was not seized until the officer ordered him out of his vehicle, the information then available to the officer did not establish probable cause to justify the warrantless search of the vehicle. We address each argument in turn.

## I. The officer did not seize Chavez-Aguilar before he rolled down his window.

Not all encounters between police and members of the public constitute seizures. *State v. Harris*, 590 N.W.2d 90, 98 (Minn. 1999). Rather, a seizure occurs when a police officer uses physical force or a show of authority to restrain a person's liberty. *State v. Klamar*, 823 N.W.2d 687, 692 (Minn. App. 2012). Under the Minnesota Constitution, a person has been seized if the circumstances as a whole would have led a reasonable person to believe they were not free to "disregard the police questions" or "terminate the encounter." *State v. Cripps*, 533 N.W.2d 388, 391 (Minn. 1995) (discussing Minn. Const. art. 1, § 10).

Generally, an officer's act of approaching and speaking with a driver sitting in an already-stopped vehicle is not a seizure. *Illi v. Comm'r of Pub. Safety*, 873 N.W.2d 149, 152 (Minn. App. 2015). This is true even if the officer parks their squad car behind the stopped vehicle, provided it does not prevent the vehicle from leaving, and even if the

officer uses the squad car's spotlight to facilitate a nighttime approach. *Id.* at 152-53. That such conduct might instill in some people a "moral or instinctive pressure to cooperate" with the officer does not convert the contact into a seizure. *Id.* at 152 (quoting *Harris*, 590 N.W.2d at 99). It is only when an officer "adds to those inherent [moral and instinctive] pressures by engaging in conduct significantly beyond that accepted in social intercourse" that a seizure occurs. *In re Welfare of E.D.J.*, 502 N.W.2d 779, 782 (Minn. 1993) (quotation omitted). That may occur if, for example, the officer orders the driver of the already-stopped vehicle to exit the vehicle. *Klamar*, 823 N.W.2d at 693.

The district court's largely unchallenged findings of fact show that the officer's nonintrusive contact before Chavez-Aguilar rolled down his window did not constitute a seizure. Chavez-Aguilar's vehicle was already stopped. The officer parked the squad car behind Chavez-Aguilar's vehicle, not next to it or in a location that would obstruct its movement. He illuminated the vehicle with his spotlight and used a flashlight to see as he approached the vehicle in the dark. He directed Chavez-Aguilar to roll down his window to speak to him, and Chavez-Aguilar did so.

Chavez-Aguilar emphasizes that, because the officer did not activate his body-worn camera and did not recall precisely what prompted Chavez-Aguilar to roll down his window, the record "clearly leaves open the possibility that . . . Chavez-Aguilar lowered his window to a verbal command, tapping of the flashlight on his window, or some other indication altogether." He contends this uncertainty must be held against the state because if the officer "commanded" him to lower his window then it was an impermissible seizure. This argument is unavailing.

6

Whether Chavez-Aguilar rolled his window down as the officer walked up or at the officer's direction is immaterial because the district court accepted Chavez-Aguilar's account—finding that the officer "directed" him to roll his window down.[2] And Chavez-Aguilar identifies no authority for the proposition that an officer directing a driver to roll down their window so the officer can speak with them converts the encounter into a seizure.

Chavez-Aguilar urges us to infer such a proposition from our decision in *Illi*, where we also addressed whether an officer's interactions with a driver in a parked car amounted to a seizure. He notes that Illi "lowered the driver's window" as the officer approached, *Illi*, 873 N.W.2d at 151, asserting that this means Illi did so "voluntarily, rather than succumbing to a show of force." We are not convinced. The only issues we decided in *Illi* were whether the officer's placement of his squad car and use of his spotlight effected a seizure. *Id.* at 152-53. We did not address what role the lowering of the window played in the seizure analysis.

We did, however, address that question in *State v. Lacey*, No. A15-1987, 2016 WL 3961953 (Minn. App. July 25, 2016), which the district court cited as "instructive." We agree that, while not precedential, the analysis in *Lacey* and its factual similarities to this case make it persuasive. *See* Minn. R. Civ. App. P. 136.01, subd. 1(c) (recognizing that

---

[2] We also observe that Chavez-Aguilar identifies no authority for the proposition that the state has a duty to collect video evidence of police interactions with civilians. Indeed, he acknowledges that even in the context of custodial interrogations, a defendant has no recognized due-process right to such evidence. *See State v. Scales*, 518 N.W.2d 587, 592 (Minn. 1994) (exercising "supervisory power to insure the fair administration of justice" to require electronic recording of custodial interrogation but declining to determine whether a defendant has a due-process right to recording).

7

nonprecedential opinions may be "persuasive authority"). In *Lacey*, an officer approached a parked vehicle and "used her flashlight to signal to Lacey to roll down his driver's side window." 2016 WL 3961953, at *1. Lacey argued that a "reasonable person, observing a uniformed officer approaching and tapping on the driver's side window with a flashlight, would not feel allowed to leave the scene." *Id.* at *3. We noted it was unclear whether the officer tapped on the window, as Lacey testified, or waived her flashlight, as the officer testified, but we rejected Lacey's contention that either action constituted a seizure. *Id.* In doing so, we reiterated that "a seizure does not occur 'when an officer merely walks up to and speaks with a driver sitting in an already-stopped vehicle.'" *Id.* (quoting *Illi*, 873 N.W.2d at 152). And we reasoned that "the additional act of tapping on the window would not have converted the interaction . . . into a seizure," even if the driver felt a "moral or instinctive pressure" to roll down his window and talk to the officer. *Id.*

In sum, the officer's conduct of approaching Chavez-Aguilar's already-stopped vehicle, illuminating it with the squad car's spotlight and a flashlight, and directing him to roll down his window so they could speak was not a seizure.

## II.    The officer had probable cause to search Chavez-Aguilar's vehicle.

The "automobile exception" permits officers to search a vehicle without a warrant, including closed containers in the vehicle, "if there is probable cause to believe the search will result in a discovery of evidence or contraband." *Torgerson*, 995 N.W.2d at 168-69 (quotation omitted). "Probable cause requires something more than mere suspicion but less than the evidence necessary for conviction." *State v. Williams*, 794 N.W.2d 867, 871 (Minn. 2011). Probable cause exists when the facts and circumstances are sufficient for a

8

reasonably prudent person to conclude that a vehicle contains contraband. *State v. Lester*, 874 N.W.2d 768, 771 (Minn. 2016). Determining whether probable cause exists is an "objective inquiry that depends on the totality of the circumstances in each case." *Id.*

The district court found that the officer made three observations before searching the vehicle: (1) he smelled burnt marijuana, (2) he saw a smoking device, and (3) Chavez-Aguilar admitted that there was marijuana in the vehicle. The district court focused on the first of these, reasoning that the officer had probable cause to search Chavez-Aguilar's vehicle because "[t]he odor of marijuana provides an officer with probable cause to search a vehicle and its occupants without a warrant." It is undisputed that this statement of law is erroneous in light of the Minnesota Supreme Court's opinion in *Torgerson*, which was issued four months after the district court's suppression ruling.

In *Torgerson*, police searched a vehicle based solely on the odor of marijuana. 995 N.W.2d at 167, 174-75. The supreme court rejected a bright-line rule permitting a vehicle search based solely on marijuana odor, noting that, under then-existing law, such an odor could be consistent with various types of noncriminal conduct. *Id.* at 169-73. Instead, the supreme court held that "the odor of marijuana should be considered along with the totality of any other circumstances to determine whether there is a fair probability that a search will yield contraband or other evidence that marijuana is being used in a criminally illegal manner," meaning "more than a small amount of marijuana, that is not hemp, and is not being used under the medical cannabis registry program." *Id.* at 173. Because the odor of marijuana was the only indication of possible criminal activity—in particular, there was "no drug paraphernalia or other evidence to indicate that the marijuana was being used in

9

a manner, or was of such a quantity, so as to be criminally illegal"—the supreme court held that the search was invalid. *Id.* at 175.

Chavez-Aguilar urges us to likewise conclude that the search of his vehicle was invalid. As in *Torgerson*, we begin our analysis by considering "Minnesota's legal landscape surrounding marijuana" at the time of the search. *See id.* at 169. The search here occurred in December 2021, only five months after the stop in *Torgerson*, and under the same legal landscape; Minnesota law did not criminalize possession of hemp, medical cannabis, or a "small amount" of marijuana, meaning less than 42.5 grams.[3] *See id.* at 169-70 (quotation omitted). But as the state notes, possession of even a very small amount of marijuana—"more than 1.4 grams"—in the body of a vehicle was a misdemeanor offense. Minn. Stat. § 152.027, subd. 3 (2020).

The facts here implicate that criminal offense in a way that those in *Torgerson* did not.[4] In addition to the odor of marijuana, two facts suggest that Chavez-Aguilar's possession of marijuana was criminally illegal: (1) he possessed a smoking device and (2) he admitted that he had marijuana in the vehicle. Chavez-Aguilar seeks to discount these additional facts, first contending that the presence of a smoking device was merely redundant to the odor of marijuana. But *Torgerson* plainly recognizes otherwise by noting

---

[3] Possession of 42.5 grams or less of marijuana was a noncriminal petty misdemeanor. Minn. Stat. §§ 152.01, subd. 16, .027, subd. 4(a), 609.02, subd. 4a (2020).

[4] The state asserts that the facts also implicate the offense of driving while under the influence of marijuana, which was at least a misdemeanor. *See* Minn. Stat. § 169A.20, subds. 1(2), 3 (2020). But the state identifies no authority for the proposition that suspicion of impaired driving justifies any intrusion beyond administering field sobriety tests. Moreover, the officer testified that Chavez-Aguilar did not "appear at all impaired."

the absence of any drug paraphernalia in that case. 995 N.W.2d at 175. Chavez-Aguilar similarly asserts that his affirmative response when asked if there was "marijuana" in the vehicle adds nothing because civilians cannot be deemed to understand the difference between marijuana and hemp. But our supreme court also rejected this argument, holding that a defendant's admission that the substance in their possession is marijuana is sufficient to establish probable cause that they possessed marijuana. *State v. Dixon*, 981 N.W.2d 387, 394-95 (Minn. 2022).

In sum, an odor of burnt marijuana together with possession of a smoking device and an admission that there is more "marijuana" in the vehicle established probable cause to believe that Chavez-Aguilar's vehicle contained at least 1.4 grams of marijuana. Accordingly, the district court did not err by denying Chavez-Aguilar's suppression motion.

**Affirmed.**